RECEIVED
U.S. COURT OF APPEALS
FOR THE D.C. CIRCUIT

2020 DEC 23  PM 3: 44

FILING DEPOSITORY

# UNITED STATES DISTRICT COURT
### for the
# DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Amber Earman | ) **Case No.** |
| 448 Walton Ave, #675 | ) Jury Trial:  [ ] Yes  [x] No |
| Hummelstown, PA 17036 | ) Case: 1:20−cv−03850 |
| 773-318-2839 | ) Assigned To : Jackson, Ketanji Brown |
| **PLAINTIFF** | ) Assign. Date : 12/23/2020 |
|  | ) Description: Employ. Discrim. (H−DECK) |
| **v.** | ) |
| Sauf Haus Bier Hall - PGS, LLC | ) |
| **DEFENDANT** | ) |

U.S. COURT OF APPEALS
FOR THE D.C. CIRCUIT
2020 DEC 23  P 3: 43
U.S. DISTRICT & BANKRUPTCY
FILING DEPOSITORY
RECEIVED

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

I.      The Parties to This Complaint

    A.  The Plaintiff

| | |
|---|---|
| Name | Amber Earman |
| Street Address | 448 Walton Ave, #675 |
| City and County | Hummelstown, Dauphin County |
| State and Zip Code | Pennsylvania, 17036 |
| Telephone Number | 773-318-2839 |
| Email Address | amberearman@gmail.com |

**B.  The Defendant**

| | |
|---|---|
| Name | Sauf Haus Bier Hall- PGS, L.L.C. |
| Street Address | 1216 18th Street, N.W. |
| City and County | Washington |
| State and Zip Code | District of Columbia, 20036 |
| Email Address | john@saufhausdc.com |
| | |
| Known Attorney | Stephen J. O'Brien |
| Street Address | 2600 Virginia Avenue, N.W., Suite 406 |
| City, State, Zip | Washington, D.C. 20037 |
| Telephone Number | 202-625-7700 |
| Email Address | sobrien@malliosobrien.com |

**C.  Place of Employment**

| | |
|---|---|
| Name | Sauf Haus Bier Hall- PGS, L.L.C. |
| Street Address | 1216 18th Street, N.W. |
| City and County | Washington |
| State and Zip Code | District of Columbia, 20036 |
| Telephone Number | 202-466-3355 |

**I.      Basis for Jurisdiction**

This action is brought for discrimination in Employment pursuant to Title VII of the Civil Rights

Act of 1964, as codified, 42 U.S.C. && 2000e to 2000e-17 (race, color, gender, religion, national

origin), and relevant state law D.C. Human Rights Act of 1977, as amended.

## II.   Statement of Claim

A.   The discriminatory conduct of which I complain in this action includes the Termination of
my Employment.

B.   I state the alleged discriminatory act occurred on June 8, 2015.

C.   I believe that defendant is no longer committing these acts against me.

D.   Defendant discriminated against me based on my gender/sex as a female.

E.   The facts of my case are as follows.

On June 8, 2015, Plaintiff reported to work at 2:00pm for a meeting as instructed by

Defendant owners John Issa, General Manager and Pablo Brown, Bar Manager. Upon arrival,

Plaintiff was terminated from employment by Defendant, the reason given was Plaintiff's absence

from work on June 5, 2015.  However, it was the Defendant that instructed Plaintiff not to report to

work on June 5, 2015 via text message midday.[1]  Defendant Edwin Villegas was also responsible

for taking Plaintiff and another female employee out for drinks the previous night June 4, 2015,

thus Defendant was aware of the celebratory night following a successful event at the

establishment.

Plaintiff, having received promotions twice and three compensation increases[2], was

considered a good employee and qualified for the job, with both managing owners stating they

were pleased with Plaintiff's work.[3]

During the D.C. OHR investigation, the commission found no evidence that anyone was

ever disciplined at the establishment thus it seems disparately harsh that the first and only discipline

of record was termination, especially a "really good events coordinator and manager". [4]

---

[1] See *Group Text*, June 5, 2015, attached.
[2] See DC OHR *Determination May 6, 2019*, pg 5, final sentence.
[3] See DC OHR *Determination May 6, 2019*, pg 11, paragraph 4 and pg 12, paragraph 6.
[4] See DC OHR *Determination May 6, 2019*, pg 11, paragraph 4.

Further, the commission determined between two witness statements and twenty-four pieces of written evidence submitted[5] that the work environment was highly sexualized.[6]

This action is about a female employee being terminated after one night out drinking with the guys to celebrate a successful work event.  If a male employee had been taken out by the owner and was running late the next day, the managing owners would have covered for him as they purported to cover for me, but the male employee would not then be terminated for the absence.

On March 25, 2020, the D.C. Office of Human Rights issued a Determination finding "probable cause" on Issue II of the Charge of Discrimination.[7]  In summary, the D.C. Office of Human Rights, General Counsel, found that although Defendant claims Plaintiff was terminated for failing to open the establishment on June 5, 2015, the D.C. OHR record includes sufficient contradictory evidence (Defendant Edwin Villegas and John Issa's role in Plaintiff's drinking, the lack of any written disciplinary history, and a general culture of irresponsibility among the owners and at the establishment) to warrant a probable cause finding on the charge of termination based on sex.[8]

Plaintiff is filing this action for judicial review within 90 days of the last determination issued by administrative agency, D.C. Office of Human Rights on September 25, 2020.[9]  Plaintiff submitting one Charge of Discrimination, three D.C. Office of Human Rights Letters of Determination issued and Group Text Message as part of this action.

### III.     Exhaustion of Federal Administrative Remedies

---

[5] See DC OHR *Determination May 6, 2019*, pg 6 and pg 7.
[6] See DC OHR *Determination on Complainant's Request for Reconsideration, March 25, 2020*, pg 7, paragraph 1.
[7] See *Charge of Discrimination, October 19, 2016.*
[8] See DC OHR *Determination on Complainant's Request for Reconsideration March 25, 2020*, pg 6 section D. and pg 7.
[9] See DC OHR *Determination on Respondentt's Request for Reconsideration, September 25, 2020.*

A.  It is my best recollection that I filed a charge with the Equal Employment Opportunity

Commission regarding the defendant's alleged discriminatory conduct on October 19, 2016

as noted on D.C. OHR Charge of Discrimination that "Cross-filed EEOC".[10]

B.  The Equal Employment Opportunity Commission has not issued a Notice of Right to Sue

since the last determination issued by the D.C. Office of Human Rights on September 25,

2020.

C.  Pro se litigant is not claiming age discrimination.

## IV. Relief

I seek compensatory damages for loss of earnings, loss of retirement fund, in the amount of

$ 32,500.00 for salary that would have been earned if employment retained one more year,

$ 7,509.97 for 401k cash out necessary following abrupt end to employment, and

$1,000.00 legal consultation fees, $ 402.00 court filing costs, for a total of $ 41,411.97;

other litigation fees and expenses to be incurred from this action such as mileage, parking;

and exemplary or punitive damages as determined by the court's discretion.


## V.  Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my

knowledge, information, and belief that this complaint: (1) is not being presented for an

improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost

of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending,

modifying, or reversing existing law; (3) the factual contentions have evidentiary support or,

if specifically so identified, will likely have evidentiary support after a reasonable opportunity

for further investigation or discovery; and (4) the complaint otherwise complies with the

requirements of Rule 11.

### A.  For Parties Without an Attorney

---

[10] See *Charge of Discrimination, October 19, 2016.*

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:            12/23/20

Signature of Plaintiff:     Amber Earman

Printed Name of Plaintiff:  Amber Earman

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

Charge Presented To:  
[X] FEPA  
[X] EEOC

Agency(ies) Charge No(s):  
17-156-P(CN)  
10C-2017-00148

and EEOC

| D.C. Office of Human Rights | |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) **Amber Earman** | amberearman@gmail.com | Home Phone (Incl. Area Code) **(773) 318-2839** | Date of Birth **N/A** |
|---|---|---|---|

Street Address **448 Walton Avenue, # 675**   City, State and ZIP Code **Hummelstown, PA 17036**

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than one, list under PARTICULARS below.)

| Name **Sauf Haus Bier Hall – PGS, L.L.C.** | No. Employees, Members **15+** | Phone No. **(202) 466-3355** |
|---|---|---|

Street Address **1216 18th Street, N.W.,**   City, State and ZIP Code **Washington, DC 20036**

DISCRIMINATION BASED ON (Check appropriate box(es).)

[ ] RACE  [ ] COLOR  [X] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN  
[ ] RETALIATION  [ ] AGE  [ ] DISABILITY  [ ] OTHER (specified below)

DATE(S) DISCRIMINATION TOOK PLACE  
Earliest **06/08/2015**  Latest **06/08/2015**  
[ ] CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired by Respondent as a Bartender/Manager on July 9, 2014. I believe that I have been discriminated against in the terms, conditions, and privileges of employment, when I was terminated based on my Sex (Female) for the following reasons:

## Disparate Treatment, Terms and Conditions - Sex

I witnessed several instances of gender discrimination towards female staff, including myself. Male employees received better pay, shifts and uniforms. Male employees were promoted faster than female employees. Male employees were not reprimanded for walking off during their shifts, however, female employees were put on probation if they went to the bathroom unannounced. Respondent applied different leave policies for male employees.

## Discharge - Sex

On June 5, 2015, I was late for work, and informed by Respondent's Management not to report to work that day. Instead, I was told to report back to work on June 8, 2015. When I reported to work on June 8, 2015, Respondent's Management terminated my employment because of my absence. To the contrary, two (2) male employees were late or did not show up for work at all and they were not similarly terminated.

Therefore, I charge Respondent with unlawful discriminatory acts in violation of the Title VII of the Civil Rights Act of 1964, as amended, and the D.C. Human Rights Act of 1977, as amended. I have not commenced any other action civil, criminal or administrative, based on the above allegations, other than the instant Charge of Discrimination that has been cross-filed with the EEOC.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

10/19/16   _Amber Earman_  
Date   Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.  
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE  
(month, day, year)   10  19  2016

JAIME DIAZ LARROEL  
Notary Public  
District of Columbia  
My commission expires February 14, 2020

**Earman vs. Sauf Haus Bier Hall**

Communication Prior to Termination

Group Text Message: Friday, June 5, 2015

Defendant directs Plaintiff not to report to work

Plaintiff replies 35 minutes later with event instructions

- **1:50pm Pablo:** Amber please send john and myself the events info for tonight. We'll handle the event. Don't come to work tonight.

- **2:25pm Amber:** Kara woke me. I just found my phone. I'm sorry. I have a 102 fever, drinking must not've help. There is a folder for Burckhalter in the bottom drawer. I will forward order pricing details.

- **9:06 pm (John) Issa:** Amber, the three of us will be meeting Monday at 2pm. Do us the favor of not coming to Sauf Haus until said time. Thank you. See you Monday. Hope you feel better.



Group conversation

# Earman vs. Sauf Haus Bier Hall

Communication Prior to Termination

Group Text Message: Friday, June 5, 2015

Defendant directs Plaintiff not to report to work

Plaintiff replies 35 minutes later with event instructions





 Government of the District of Columbia
Mayor Muriel E. Bowser

 Office of Human Rights
DISTRICT OF COLUMBIA

One Judiciary Square
441 4th Street NW, Suite 570N
Washington, DC 20001
202.727.4559 tel
202.727.9589 fax
ohr.dc.gov

## DISTRICT OF COLUMBIA
## OFFICE OF HUMAN RIGHTS

---------------------------------------------x

Amber Earman,
    Complainant,

      v.

Sauf Haus Bier Hall – PGS, LLC,
    Respondent.

---------------------------------------------x

**OHR Docket No.:**    17-156-P(CN)
**EEOC / HUD No.:**    10C-2017-00148

## LETTER OF DETERMINATION
### *NO PROBABLE CAUSE FINDING*

The District of Columbia Office of Human Rights (OHR) has completed the investigation of the above referenced complaint. Amber Earman, an Events Coordinator / Marketing Manager is referred to as **"COMPLAINANT."** Sauf Haus Bier Hall – PGS, LLC, Complainant's former employer, is referred to as **"RESPONDENT."**

## ISSUES PRESENTED

I.   Whether there exists probable cause to believe that, between May 4, 2015,[1] and June 8, 2015, Respondent discriminated against Complainant and other female workers with respect to terms and conditions of employment such as compensation, shift assignment, uniform, promotion, and discipline.[2]

II.   Whether there exists probable cause to believe that Respondent discriminated against Complainant based on sex (female) on June 8, 2015, when Respondent terminated her employment following an absence from work on June 5, 2015.

---

[1] Because Complainant alleges disparate treatment of an ongoing nature, OHR has defined the relevant period based on the year preceding Complainant's May 4, 2016, filing with OHR, pursuant to the one-year statute of limitations, defined at 4 DCMR § 702.1(a).

[2] OHR notes that Complainant did not actually allege that she was harmed by such practices (other than her termination, which is Issue II); rather, her claim is that she "witnessed" the alleged discrimination. *See* Statement of Complainant (OHR File at § III). As discussed more fully below, Complainant was promoted twice during her brief tenure with Respondent, made as many if not more tips than her male counterparts (when she moonlighted as a bartender), was the only salaried employee who was not an owner, and testified that she was not required to wear the uniform during the relevant period.

## SUMMARY OF FINDING

I.   OHR finds **NO PROBABLE CAUSE** to believe that Respondent discriminated against Complainant or other female workers on the basis of sex (female) when it allegedly disparately applied its employee policies to female workers, because there is no evidence that females received fewer hours or less desirable shifts, were not promoted, or discriminatorily disciplined.  Furthermore, there is no evidence that female employees were required to purchase unusual items of clothing or that the uniform choices were so objectively offensive as to constitute a hostile environment.

II.  OHR finds **NO PROBABLE CAUSE** to believe that Respondent discriminated against Complainant on the basis of her sex (female) when it terminated her employment, because the investigation revealed no evidence to support a reasonable inference of sex discrimination and no credible, substantial, and probative evidence that the Respondent's proffered reason for the termination was not the actual reason for the adverse action.

## JURISDICTION

OHR has jurisdiction over complaints brought to OHR within one year of the occurrence of an alleged discriminatory act that occurred in the District of Columbia.  *See* D.C. Code § 2-1403.04(a); 4 DCMR § 702.1(a).  The complaint indicates that the alleged discriminatory conduct occurred on June 8, 2015.  The complaint was filed on May 4, 2016, within the statutory period.[3]  The alleged discriminatory acts occurred while Complainant was Bartender/Manager with Respondent at 1216 Eighteenth Street NW, Washington, DC.  Accordingly, OHR has jurisdiction over this complaint.

## SUMMARY OF INVESTIGATION

OHR's investigation included a review of (1) Complainant's Charge of Discrimination; (2) Respondent's Position Statement; (3) Respondent's Responses to OHR's Requests for Information; (4) Complainant's Rebuttal and Attachments; (5) Complainant's Interview; and (6) Witness Interviews.

### Complainant's Allegations[4]

In the Charge of Discrimination, Complainant alleges the following:

Male Respondent employees received better pay, shifts, and uniforms than female Respondent employees.  Additionally, male Respondent employees were promoted faster than female employees and were not reprimanded for walking off during their shifts, while female Respondent

---

[3] *See* Complainant's Initial Written Complaint, dated May 4, 2016 (OHR File at § 11).  The initial written complaint shall constitute the filing date.  *See* 4 DCMR § 705.2.
[4] *See* Complainant's Charge of Discrimination, dated June 19, 2016 (OHR File at § II).

*Amber Earman v. Sauf Haus Bier Hall – PGS, LLC*
Docket No. 17-156-P(CN)
EEOC No. 10C-2017-00148
Page 3 of 22

employees were put on probation for going to the bathroom unannounced. Respondent applied different leave policies for male employees.

Complainant was late for work on June 5, 2015, and was directed by Respondent Management not to report to work that day. Respondent Management stated that she should return to work on June 8, 2015. Complainant reported to work on June 8, 2015, and was informed by Respondent management that her employment was terminated due to her absence. Comparatively, two (2) male Respondent employees that were late or did not show for work were not terminated.

**Respondent's Position[5]**

In its response to the Charge, Respondent asserts the following:

Respondent denies any allegations that Complainant was subjected to disparate treatment when compared to similarly-situated persons based on sex and holds that any comparison of herself to Respondent Owner One (OO) and Respondent Owner Two (OT) is misplaced because as owners of the employer, they are not reasonably similarly situated.

Respondent denies that male employees were given better pay, shifts or uniforms; were promoted faster; reprimanded less often; or were afforded more lenient leave practices. Complainant provided no specifics in regard to these claims, and Respondent is unable to state more than general denials. If specifics are offered, Respondent can respond specifically.

Complainant was hired by Respondent OO and Respondent OT, both males, when Respondent opened in July 2014. Complainant was promoted shortly after to Manager on Duty by Respondent OO and Respondent OT. Complainant was the first employee, from a pool of both sexes, to be promoted to a Manager on Duty position. However, on August 3, 2014, Complainant failed to report to work due to a hangover; rather, she gave her keys and the safe combination to Witness One (female), her roommate and also a Respondent employee. Witness One was not an ABC-licensed manager, and the absence of such a manager violated Respondent's liquor license. In spite of this violation, Complainant was not terminated.

Complainant was subsequently promoted to Events Coordinator/Marketing Director and began to earn commissions on bookings in addition to her salary. On June 5, 2015, Complainant was scheduled to report to work to prepare for a wedding rehearsal dinner that day. At 12:15 in the afternoon, Respondent OO received a call from the band scheduled to play at the event, advising that Complainant had not appeared to allow them entry to the facility. After hours of telephone and text messages trying to reach Complainant, Complainant finally responded that she "had a fever." Respondent determined through a credible source that Complainant had been drinking heavily into the morning of June 5, 2015, and was too hungover to report to work.

Respondent OO and Respondent OT met with Complainant on June 8, 2015, and terminated her from her events/Coordinator/Marketing Director position. Complainant was offered the

---

[5] *See* Respondent's Position Statement, dated August 22, 2017 (OHR File at § V).

*Amber Earman v. Sauf Haus Bier Hall – PGS, LLC*
Docket No. 17-156-P(CN)
EEOC No. 10C-2017-00148
Page 4 of 22

opportunity to remain employed with Respondent as a Bartender, but she declined. Complainant was immediately replaced by a female. This factual pattern negates the allegation that Complainant was terminated on the basis of her sex.

## Complainant's Rebuttal[6]

In her reply to Respondent's response to the Charge, Complainant asserts the following:

Complainant disagrees that she was not subjected to disparate treatment based on sex. Complainant states that she when she was terminated for being late, Respondent Owner One (OO) told her that she was "held to a higher standard." Complainant holds that she was reprimanded for the offense more harshly than any male Respondent employee.

Comparator One (male), a bartender who would sometimes serve as Manager on Duty, consistently left the premises, while he was serving as Manager-on-Duty,[7] to go get food, thereby jeopardizing the terms of Respondent Liquor License policy. Comparator One retained employment with Respondent while Complainant was terminated.

Complainant was accused of giving her keys to a responsible employee to begin set-up procedures. Comparatively, Respondent Owner Two (OT) gave the keys to the office to a male Respondent employee so that he could abandon his bar assignment to go have sexual intercourse there with a patron during business hours while the safe and computer were actively engaged.

Complainant was terminated for being absent while many male Respondent employees repeatedly arrived late, failed to report to work altogether, or walked off during their shifts.

Respondent's Human Resources policy was managed by the weekly schedule and the whims of Respondent OT. Respondent guidelines were enforced selectively with female employees being punished by having shifts taken away and male employees being rewarded with better shifts. Respondent Human Resources documentation was limited to a standard job application, tax forms and possibly a resume prior to June 8, 2015. No respondent employee manual or handbook, operating procedures, policies, expectations, incident reports, warning or staff acknowledgement forms were used.

Respondent overall shifts and the prime shifts assigned to females were consistently lower than their population until male employees began to outnumber the female employees. Only female Respondent employees were given zero shifts repeatedly for entire weeks. Male Respondent employees with the same limited experience as their female co-workers were given prime shifts over females. Complainant cites three female Respondent employees who were left off the schedule for weeks until finally dropping altogether.

---

[6] *See* Complainant's Rebuttal, dated September 5, 2017 (OHR File at § IV).
[7] Respondent indicated to OHR that both Complainant and Comparator One worked as bartenders, although by 2015, Complainant was also listed as a salaried employee, while Comparator One was listed only has an hourly employee. *See* Respondent's Responses to OHR's Request for Information (OHR File at § V).

*Amber Earman v. Sauf Haus Bier Hall – PGS, LLC*
Docket No. 17-156-P(CN)
EEOC No. 10C-2017-00148
Page 5 of 22

Respondent female employees had four major uniform changes during a short time period during which the male employees had only two minor uniform changes. All of the uniforms were mandatory, including the half that was not company provided. Female Respondent employees had to spend more money on their uniforms to keep up with the changes or risk losing shifts and their pay.

Complainant explains that the second employee to be promoted to a manager position after she had been promoted (she was the first) was a male employee who was chosen over at least two better qualified female employees.[8] Complainant acknowledges that the third and fourth employees promoted were females.[9] No other employees had been fired as of June 8, 2015.

Respondent OT avoided disciplinary documentation, warnings, suspensions and terminations by simply failing to schedule Respondent Bartenders regardless of their availability. Male Respondent employees that left their bar assignment, were repeatedly tardy or absent, left the establishment, or consumed alcohol during their shift were all able to maintain their employment with Respondent. Complainant cites several specific incidents where three male Respondent employees participated in these behaviors and were not removed from the schedule while female respondent employees were sent home or removed from the schedule for the same.

Respondent didn't keep records in an effort to avoid transparency and accountability. Complainant provided specifics to both OHR and DOES during two separate processes and personal interviews. Complainant holds it is not her responsibility to provide Respondent with any specifics prior to this point of the investigation process.

Complainant has no knowledge of the applicant pool from which she was selected for a Manager position as it was prior to Respondent opening. Complainant agrees that she was the first non-owner manager at that time.

Complainant holds that she never committed a no call/no show during her employment with Respondent. Respondent's dates and statements regarding her allegedly failing to report to work due to a hangover in August 2014 are false. Complainant advises that for Respondent to assert that she was hungover is libel and holds that there is no documentation of this alleged misconduct. With no manual or handbook to guide her decision-making, Complainant used what she believed to be her best judgement when she gave the keys to Respondent's facility to Witness One, another employee, to open the establishment for other staff in case of her delayed arrival. Complainant was told Witness One was licensed and that she was a former manager in previous establishments where she held a liquor license. Although Complainant was tardy for her shift, she did report to work and complete her shift that day.[10] Notably, Complainant was subsequently promoted two months after this incident and received another compensation increase three months later.

---

[8] Thus, initially, two employees were promoted: one female and one male.
[9] Thus, ultimately, four employees were promoted: three females and one male. OO also indicates in his interview, summarized below, that after Complainant and a male colleague were promoted from staff position to management position, two female staff members were promoted to management positions.
[10]Complainant indicates the date of this incident was September 13, 2014. *See* Supplemental E-Mail from Complainant, dated September 20, 2018.

*Amber Earman v. Sauf Haus Bier Hall – PGS, LLC*
Docket No. 17-156-P(CN)
EEOC No. 10C-2017-00148
Page 6 of 22

Complainant did not have a set schedule in her salaried Events Coordinator/Marketing Director position. Complainant had no written job description, outlining roles, responsibilities or expectations in the position. Complainant was not scheduled to work a Bartender or manager on Duty shift and therefore had no written schedule on June 5, 2015. Complainant did not book, pay or schedule bands; rather Respondent managing members did. Complainant was not informed on June 5, 2015, of any time for a band rehearsal.

On June 4, 2015, after completing her day's work tasks, Complainant was given alcohol for a job well done by Respondent OO. Complainant and Witness One were invited out by Respondent Majority Managing Owner to another bar at 11 PM. Complainant was helped home at 1:00 AM and acknowledges consuming alcohol provided and purchased by Respondent Managing Owners. Complainant became so sick that she missed all calls, texts and messages until after her tentative report time. Contrary to Respondent's assertion she was not hungover; rather, she was bedridden with flu-like symptoms, including convulsions, vomiting, fever, and headaches.

Complainant was terminated after being late and told not to report to work by Respondent OO and Respondent OT. At that time, Complainant had already been removed from bartending shifts for five weeks. Complainant was shocked by the directive given by Respondent OO, after which Respondent OT offered to rehire Complainant as a bartender. Complainant declined the offer due to awareness of his practice to simply deny shifts rather than terminate employees.

Complainant is aware that she was replaced by an outside hire, not a promotion within, and that the replacement is no longer employed by Respondent.

**Documents**

OHR reviewed and considered the following documents provided by the Complainant:[11]
  A. Rebuttal and Attached Documents
    1. Schedules Summary, July 18, 2014 through June 14, 2015
    2. Complainant Promotions and Determinations
    3. Determination by Claims Examiner, dated July 12, 2015
    4. Uber Receipt, dated September 13, 2014
    5. Uber receipt, dated September 13, 2014
    6. Complainant Pay stubs, period November 15, 2014 through November 28, 2014
    7. Complainant Pay stubs, period February 21, 2015 through March 6, 2015
    8. E-Mail Exchange regarding shorter breaks, dated February 8, 2015
    9. Transcription of Text Messages between Complainant and Van Nguyen regarding her resignation, dated August 8, 2017
    10. Screenshots of text Messages between Complainant and Van Nguyen regarding her resignation, dated August 8, 2017
    11. Yelp Review complaining in regard to Respondent Female Beer Wench uniforms, dated September 12, 2014

---

[11] *See* OHR File at § IV.

*Amber Earman v. Sauf Haus Bier Hall – PGS, LLC*
Docket No. 17-156-P(CN)
EEOC No. 10C-2017-00148
Page 7 of 22

    12. Yelp Review complaining in regard to Respondent Female Employee uniforms, dated September 24, 2014
    13. Yelp Review complaining in regard to the Respondent Female uniforms, dated January 9, 2015
    14. E-Mail Exchange regarding "Moving Forward", dated September 2, 2014
    15. Photograph of July 2014 and August 2014 Female Respondent Uniform, date unknown
    16. Photograph of September 2014 through January 2015 Female Respondent Uniform, date unknown
    17. Photograph of September 21, 2014 Female Respondent Uniform, date unknown
    18. Photograph of January 18, 2015 Female Respondent uniform, date unknown
    19. Email from Respondent OT to Respondent Employees stating that the uniform dress is mandatory every day, dated September 8, 2014
    20. E-Mail Exchange reminding Female Respondent Staff to always bring their Uniform, dated September 14, 2014
    21. E-Mail Exchange stating that the uniform policy is mandatory on Fridays and Saturdays, dated September 21, 2014
    22. E-Mail Exchange detailing a new uniform option for Female Respondent Employees, dated January 18, 2015
    23. E-Mail Exchange regarding Late and Out of Uniform policies for Respondent Staff, dated November 21, 2014 and January 6, 2015
B. Additional Information
    1. E-Mail to OHR Intake Officer including Chronological list of disparity among the sexes at Respondent, dated August 24, 2016

OHR reviewed and considered the following documents provided by Respondent:[12]
A. Position Statement
B. Responses to Request for Information and Attached Documents
    1. Respondent Find report, dated June 1, 2015
    2. Respondent Employee Directory, date unknown
    3. Complainant's Resume, date unknown
    4. E-Mail from Complainant to Respondent Owner One expressing her interest in a Management position, dated June 29, 2014
    5. Complainant's Liquor License, expiration date August 29, 2016
    6. Respondent Sample Agreement for Employment of Manager, date unknown
    7. Respondent Bartender Job Description, date unknown
    8. Respondent Sample Acknowledgment of Employee of Receipts of Bartender's Manual

**Summary of Relevant Documents**

1. **In Complainant's March 2, 2018, email to OHR Investigator,** Complainant states that she was never a no call/no show during her employment with Respondent. Complainant

---

[12] *See* OHR File at § V.

*Amber Earman v. Sauf Haus Bier Hall – PGS, LLC*
Docket No. 17-156-P(CN)
EEOC No. 10C-2017-00148
Page 8 of 22

further asserts that she does know of one Respondent bartender, Nicky Hoberman (Male)[13] that repeatedly failed to show or call for his shifts. This email further explains how Respondent Manager Niya Donnelly (female) committed frequent infractions similar to those allegedly committed by Complainant but was allowed to retain her employment with Respondent. Complainant states that she had to cover for this female manager on more than one occasion and asserts it is another example of the disparate treatment she was subjected to. Complainant states that because she was not always the point of contact as Respondent Bar Manager, she was not always privy to whether or not an employee had actually called out.

2. **Email exchange from February 8, 2015, between Respondent Owners and all Respondent staff:** the email stated that staff are not to leave the premises without notifying the Manager or during a busy period. Comparator One responds "my bad last night."

3. **Respondent's response to OHR's Request for Information:** Respondent states that Complainant was the successful candidate for each promotion she applied for (Manager on Duty and Events Coordinator). Additionally, the individuals who replaced Complainant in the Events Coordinator position were both female and hired in July 2015 and March 2016, respectively. (OHR notes that the Charge was served on Respondent in October 2016, *after* the hiring decisions).

4. **Respondent's Payroll Records from the period August 9, 2014, through August 22, 2014:** the records show that all bartenders, including Complainant, were paid at a rate of $2.77 per hour. Additionally, during that period, four of the six bartenders scheduled for more than sixty (60) hours were female. The two highest tipped bartenders were females.

5. **Respondent records from April 18, 2015, through May 1, 2015**, indicate that the bartender scheduled for the most hours (80+) was a female. All bartenders received the same hourly pay, while Complainant received a salary plus additional remuneration from 28.9 hours of bartending. The highest tipped bartender was a female. Other than the owners, Complainant was the only salaried employee.

**Information from Witnesses**

OHR obtained and considered the following information from witnesses:[14]
   A. Complainant
   B. Respondent Owner One
   C. Respondent Owner Two
   D. Witness One
   E. Witness Two

---

[13] Based on payroll records provided by Respondent, Nicky Hoberman, an hourly bartender, was paid $0 during the August 9-22, 2014, pay period, and thereafter removed from payroll. *See* OHR File at § V.
[14] *See* OHR File at § III.

*Amber Earman v. Sauf Haus Bier Hall – PGS, LLC*
Docket No. 17-156-P(CN)
EEOC No. 10C-2017-00148
Page 9 of 22

## Complainant

Complainant (female) was employed with Respondent from approximately July 21, 2014, through June 8, 2015. At the time of her hire, Respondent was a new establishment, and Complainant was initially brought on as a bartender. Prior to Respondent opening for business, Complainant was promoted to a Manager position, serving as both Bartender and Manager when the doors opened for business. Complainant reported directly to Respondent OO and Respondent OT during her employment with the Respondent. Complainant does not believe she was ever formally evaluated in her position and had never been disciplined prior to her termination.

Complainant witnessed discrimination against female employees in addition to being directly affected by Respondent's disparate treatment against female employees. Specifically, Complainant was required to wear Respondent's uniform up until approximately three (3) weeks before she was terminated. Complainant wore the uniform whenever she was scheduled for bar shifts even after being promoted to a management position. As a Manager, Complainant could wear whatever she wanted in her position and chose to wear respectful clothing in case she had to deal with a patron. When Complainant was scheduled for dual duty as a Manager and a Bartender, she wore the uniform and sometimes had to interact with patrons in her management role while dressed in the uniform. Complainant purchased a new uniform every time it was changed, including the soccer uniform and vests and additional clothing to go under the dresses the Female employees were required to wear. Complainant acknowledges that she could have just worked in her Manager's uniform but considered herself to be a team player and wanted to set a positive example for the other female employees.

Complainant was also directly impacted by the disparate treatment afforded to female employees in regard to scheduling. Respondent often played favorites and scheduled male employees with less experience than their female counterparts for the prime shifts. When Respondent assigned these high-volume shifts to Complainant and an inexperienced male employee, it resulted in Complainant having to work harder to fill the void.

Complainant was not the only female employee to notice the disparate treatment and cites two other female Employees that eventually resigned over the disparate treatment in regard to the uniforms and the lack of significant shift assignments. As a result, morale among female employees with Respondent was very low and the turnover among them was higher than the male employees. Complainant holds that Respondent employees received encouragement from her but not from any other manager.

Complainant was further directly impacted by the disparate treatment when she was terminated for an absence when a male Manager could walk off of his shift at any time without being reprimanded, much less terminated. Complainant advises that the male employees and Respondent Owners are very involved in CrossFit lifestyle and workout together often. She believes these personal relationships also play a role in the favoritism given to Male Respondent Employees.

Complainant states she was late for work on Friday June 5, 2016, and was told not to come to work at all that day or to worry about the events on the schedule. Complainant was further told not to

report to work again until directed to do so. When Complainant appeared for work that following Monday as directed, Respondent OO and Respondent OT sat her down and told her that her absence was problematic and couldn't happen again. When asked what her feelings were, Complainant stated that she believed Respondent needed a backup. Complainant was shocked when Respondent terminated her and believes there was something more to it, though she can only speculate. Respondent seemed to feel sorry for her and offered her the opportunity to remain employed as a Bartender. Complainant declined, turning over the work product for the work she had been doing as marketing and events director. Complainant came in again the next day before the staff and provided all of her information to Respondent OO.

Complainant believes she was terminated because Respondent OT felt threatened by her presence and attempts to hold Respondent accountable; specifically, Complainant pushed for handbooks. Complainant attempted to help Respondent make money, but Respondent didn't know how to manage her because she had more business experience than Respondent OO and Respondent OT. Complainant states that Respondent OO viewed her as an asset while Respondent OT viewed her as a threat. Complainant believes Respondent OT was concerned Complainant was trying to take his job.

Complainant states that Comparator One (male) and other male employees were always late, but were not reprimanded, even when Complainant was the manager on duty. Respondent OT always told Complainant "oh no you need him today," suggesting that disciplining would not be a good idea.

In regard to the alleged incident regarding providing entry to a band for rehearsal on a particular day, Complainant holds that she did not know she was supposed to be letting in any band. Complainant told Respondent that she would report for work the next day at 12:30 PM. Complainant responded to Respondent at 1:30 PM, well before the doors opened to the public.

Complainant advises that she was not scheduled that day; rather, she was reporting to work to prepare for a private event later that afternoon. At that time, Complainant was no longer scheduled as a Manager or Bartender; rather, she was in a salaried position. Complainant discussed her schedule with Respondent weekly.

Complainant is not aware of any other employee being formally terminated from employment with Respondent; rather, Respondent simply removed employees from the schedule. Complainant believes she was formally terminated because she was a salaried position that could not have hours taken away.

While Respondent did not make any discriminatory comments regarding Complainant's sex at the time of her termination, Respondent OT made a point of telling her that they had never had a female Manager before but would "give [her] a shot." Complainant was not the only female Manager during her employment with Respondent and acknowledges that a Female Manager was brought on at the end of November to assist.

*Amber Earman v. Sauf Haus Bier Hall – PGS, LLC*
Docket No. 17-156-P(CN)
EEOC No. 10C-2017-00148
Page 11 of 22

### Respondent Owner One

Respondent Owner One (OO) (Male) is a General Manager and Managing Partner. His responsibilities include everything concerning Respondent operations such as hiring, firing of employees and even sweeping up when needed.

Respondent OO confirmed Respondent OT's testimony. Respondent OO does not recall the incident where Respondent OT soaked a Female Respondent employee while she was wearing a white shirt. Respondent OO does acknowledge that the uniform changed seasonally but holds that there were no complaints from Respondent Female employees in regard to their uniforms.

Respondent OO did not witness any discriminatory behavior or comments based on sex towards any Respondent employee and holds that any indication of that would've been handled right then and there.

Respondent OO states that he would still write Complainant a recommendation to this day and maintains even now that she was a really good events coordinator and manager.

Respondent OO acknowledges that there was nothing written in regard to Complainant's schedule on the day of the incident that led to her termination. Respondent OO advises the agreement was a verbal one. Complainant had spoken to a member of the band and said she would be there to let him in the next day. When Complainant left work the evening before, Respondent OO asked Complainant to please not forget to be there the next day to let the band in to which Complainant replied she would not forget.

Complainant was replaced with a Female who was also subsequently replaced by another Female.

### Respondent Owner Two

Respondent Owner Two (OT) is an owner and managing partner at Respondent. Respondent OT's duties include managing the beer program, picking what liquors are sold, tracking costs, handling deals, and scheduling and managing front-house staff. Respondent OT works with his partners and management team on these tasks.

Complainant was literally one of the first hires Respondent made when it was a small operation with no employee handbook. Respondent OT maintains that while there was no employee handbook, there were written policies in place that were distributed weekly to Respondent employees with their schedules.

There were a couple of incidents leading to Complainant's termination from employment, but the catalyst was the night prior to the day in question where Complainant had a conversation with Respondent OO in which she confirmed the band was coming in and that she would be on time to come in. When she did not appear the next day as scheduled to allow the band entry, Complainant did not call Respondent to inform them that she would not be coming in. On that day, the band called Respondent OO and said they could not get in the building. Additionally, Complainant did

*Amber Earman v. Sauf Haus Bier Hall – PGS, LLC*
Docket No. 17-156-P(CN)
EEOC No. 10C-2017-00148
Page 12 of 22

not arrive at a later time to accept the food deliveries for the rehearsal dinner she had planned that day. Respondent was not aware of any of the details of the rehearsal dinner and did not know how to set up for the $6,000 event. Respondent became worried about Complainant's well-being and did not receive word that Complainant was okay but would not be coming in to work that day.

Complainant's schedule at that time consisted of regularly scheduled hours written into the weekly schedule; Complainant was permitted to come and go relatively as she pleased as long as she was on the premises for any event that she planned.  Respondent OT explains that Complainant volunteered to arrive at work early enough to allow the band entry to set up for their event, stating that she would already be on the premises anyway at that time to accept the food delivery from the caterer for a separate event she had planned for that day.

The incident with the band was the second incident where Complainant did not show up for work on her scheduled day.  The first incident involved Complainant giving the keys to Respondent's facility to another employee to open the establishment for business.  Complainant gave the keys to an employee that should never have had the keys.  Respondent OT has given the keys to Respondent employees to open up the establishment in his absence, however, typically to those employees with a liquor license.  Complainant was not in any position to make such a decision. On another occasion, Complainant gave sensitive passwords to a Respondent partner that hosted parties at Respondent.  Complainant gave the Respondent employee and Partner access to these sensitive materials without requesting approval from the owners first.  In spite of Complainant's egregious mistakes and subsequent termination, Respondent offered Complainant the opportunity to remain employed with Respondent in a different capacity and offered to write her a letter of recommendation when she declined the offer.

Respondent OT admits to writing "WTFIW" for himself on the schedule to indicate that as an owner of the establishment he could come and go as he pleased as long as he did not interfere with the staff making money.  Respondent OT admits that he could have changed the verbiage and meant it more as a joke than anything else.

Respondent OT does not recall having given the keys to the office to a male Respondent Employee during business hours while actively working so that he could have sexual intercourse with a patron. Respondent OT is aware that this particular Male Respondent Employee may have fooled around with a girl in the office but under no circumstances would he stand for anyone having intercourse at work which he made clear to the staff.  Respondent OT also clarifies that this particular Male Respondent Employee was a Bartender, not a Manager with Respondent.

Prior to her termination from employment, Complainant had never been formally disciplined but had been verbally warned about procedures, do's and don't's.  Respondent was satisfied with Complainant's work "for the most part" but advises there were issues that an employee in her position that should not have done, as detailed above. After bringing the issues to Complainant's attention, Respondent made it clear that their concerns were serious, and Complainant's actions jeopardized the business.

*Amber Earman v. Sauf Haus Bier Hall – PGS, LLC*
Docket No. 17-156-P(CN)
EEOC No. 10C-2017-00148
Page 13 of 22

Respondent OT states that he cannot remember how many uniform changes Female Respondent Employees were subjected to but acknowledges that the uniforms definitely changed seasonally. Notably, Respondent OT asserts that uniforms were also changed seasonally for Male employees because "cold is cold." Respondent OT states that the men weren't given as many options as the Female Employees, but Respondent tried to be inclusive in any decision making in an attempt to create a conversation where all staff could be satisfied. Changes to the uniform were made to accommodate weather as the second floor of the building is an open air outside environment.

Respondent OT was unaware of Comparator One leaving the establishment, but he did write to the entire staff when the issue began to become a problem in general. Respondent OT also directed the staff to bring their own food with them so that they would not have to leave the establishment, as chronic absences were affecting the business. As an owner, Respondent OT never stepped away from the establishment for any reason in an effort to keep the staff on their toes at all times. Respondent OT states that the staff had previously made it clear that when Management was away the "mice would play." Respondent OT never stepped away from the bar for hours.

Respondent OT notes that the very first Respondent Manager was a Female. When a Respondent Employee is promoted there are many factors taken into consideration and in the case Complainant points to, the Male Respondent Employee was selected for reasons more than just experience. Specifically, the Male employee spent countless hours on the premises, his desire to learn the business and because he showed great potential. This male employee is still employed with Respondent, the only employee to remain from the original group of hires.

Respondent OT does not recall sending a disproportionate number of females home and asserts that he treats all Respondent employees equally. Respondent OT does not remember squirting Witness One (female) with the soda nozzle at the bar[15] and acknowledges that that type of behavior would not have been appropriate in a work setting.

Respondent prides itself on their staff and have not terminated an employee since Complainant. Respondent OT acknowledges that their business is a transient one, and Respondent actually wants their staff to eventually move on to their passion, whatever that may be.

***Witness One***

Witness One (female) was[16] employed with Respondent for three years, from June 2014 until May 2017 and was hired on the same day as Complainant. Witness One worked initially as a bartender and eventually began doing office work for them. Witness One reported directly to Respondent OO and Respondent OT.

Witness One describes the uniforms female Respondent staff had to wear as "ridiculous." When Respondent first opened, female staff had to wear very provocative, short dresses with puffy

---

[15] As explained below by Witness One, Witness O contends that OT squirted her with water while she had on a white t-shirt.
[16] The interview was conducted on September 8, 2017, after Witness One was no longer employed by Respondent.

*Amber Earman v. Sauf Haus Bier Hall – PGS, LLC*
Docket No. 17-156-P(CN)
EEOC No. 10C-2017-00148
Page 14 of 22

sleeves (dirndl) while the male staff wore jeans and t-shirts. Female Respondent staff that refused to wear the uniforms were not permitted to work. Respondent made the female staff wear these uniforms even in the winter months while working the rooftop. Respondent female staff were further directed that they could not wear large jackets over their uniforms.

Witness One advises that the uniforms were not the only difference in standard for female and Male respondent staff. Additionally, male Respondent staff were permitted to show up later and do whatever they wanted. Witness One recalls a male employee with no bar experience that was promoted quickly to a Manager position over female Respondent staff with more experience and qualifications. Witness One holds that female staff were treated harsher by OT, never by OO. OO has never treated Witness One disparately; rather, he has been caring and extremely generous and a fantastic employer. Respondent OT, however, has demonstrated inappropriate behavior towards female staff.

In one such inappropriate incident, OT sprayed Witness One with a water gun while she was wearing a white shirt, the uniform at that time. OT made Witness One work the rest of the shift in a drenched white shirt. Witness One remembers Complainant witnessing the incident and being very upset by it. When Witness One complained to OO about being sprayed, he told her to retaliate by spraying Respondent OT back, which she acknowledges she did. Both Respondent OO and Respondent OT had come from Bartending, not necessarily Management backgrounds, and Respondent's workplace was a "juvenile" workplace with a "party atmosphere." Complainant believes that had Respondent OO been aware of the full extent of Respondent OT's behavior, he may no longer be employed with Respondent. However, Witness One does not recall Respondent OO or Respondent OT ever making any discriminatory comments in regard to Sex during her employment with Respondent.

Witness One advises that this behavior from Respondent OT occurred weekly with him getting very intoxicated and throwing chairs, breaking glasses, throwing glassware at the walls and making it very hard for staff, especially the female staff to perform their job duties. The male employees were close friends of Respondent OT, and he allowed them to show up late for their shifts, including the male managers, and to leave the premises without any disciplinary action being taken to her knowledge.

Witness One advises that on the day Complainant gave her the keys to open the establishment when she thought she may run late, Witness One was not given the safe combination and did not enter the office at any time.

Witness One is not aware of any other manager to be terminated other than Complainant, prior to Witness One's separation from Respondent. Notably, Witness One advises that female managers did not make it at Respondent for very long, the longest being a female with a strong personality who was not "easily bullied."

Witness One was in the establishment the night Respondent OT gave the keys to the office to a male employee to have sex with a patron. While she is unaware of the details, Witness One did witness the keys being exchanged and the employee entering the office. Witness One holds that

the office absolutely contains sensitive materials and does not believe there is any way to know exactly what happened in there during that time with no camera in the office.

Witness One states that the problem at Respondent is OT and that it is a shame Respondent OO is tied to him in this business. She believes herself to be in a difficult situation because she knows the environment needs to change but hates that Respondent OO will be affected in making those changes.

### Witness Two

Witness Two (female) was employed as a bartender by Respondent from July through September of 2014. Witness Two does not remember the details surrounding the events that led to her resignation; rather, she only remembers there were a lot of disrespectful comments made by Respondent OT, her direct supervisor, towards the staff. Witness Two states that the comments were made to the entire staff in staff trainings or in emails to the staff. Witness Two could not say for sure if the comments made were more disrespectful towards Respondents female employees than they were towards the male employees.

Witness Two worked approximately sixteen (16) hours per week not because she did not have more availability but because she did not like working there. When Witness Two did work she was given prime Friday and Saturday night shifts primarily and could not speak on what other employee schedules were like. Witness Two believes she was scheduled for prime shifts because she was referred to Respondent by a friend of Respondent OT. Witness Two always worked with a female friend of hers during those shifts.

Witness Two does not remember any sexual harassment, only that the women were forced to wear what she describes as demeaning uniforms while the male employees could wear whatever they wanted. Specifically, Witness Two states that the uniforms consisted of very short dresses and low-cut tops. Witness Two states that during her employment with Respondent, they had only one uniform change.

Witness Two states that she did not witness any disparate treatment based on sex nor did she personally experience any discrimination based on her sex. Witness Two attributes this to the fact that she was brought in by a friend to Respondent.

### OHR'S FINDINGS

#### GENERAL LEGAL STANDARD - PROBABLE CAUSE STANDARD OF REVIEW

OHR's duty at the probable cause stage is to "consider all the evidence and allegations to determine whether [Complainant's] claims [are] 'reasonable' and make out a *prima facie* case under the Human Rights Act." *Smith v. D.C. Office of Human Rights*, 77 A.3d 980, 997-98 (D.C. 2013); *see also Sparrow v. D.C. Office of Human Rights*, 74 A.3d 698, 706 (D.C. 2013) ("[T]he probable cause standard . . . requires consideration of whether [Complainant's] version of events [are] reasonable, not whether he failed to disprove [Respondent's] version of events."); *Grove v. Loomis*

*Amber Earman v. Sauf Haus Bier Hall – PGS, LLC*
Docket No. 17-156-P(CN)
EEOC No. 10C-2017-00148
Page 16 of 22

*Sayles & Co.*, 85 A.3d 832, 836 (D.C. 2014) (Complainant's claims must be reasonable and make out a *prima facie* case for a finding of probable cause).

Additionally, where Respondent has asserted a legitimate, non-discriminatory reason (or reasons) for its action, OHR has a duty to evaluate whether Complainant has provided credible, substantive, and probative evidence that the allegedly legitimate, non-discriminatory justification given by Respondent was not the actual reason for the action. *See Grove*, 85 A.3d at 836; *see also Freeman v. D.C. Office of Human Rights*, No. 13-CV-1150, fn. 2 (D.C. decided November 6, 2015) (unpublished). However, Complainant is not required to disprove Respondent's version of events at the probable cause stage. *See Smith*, 77 A.3d at 997.

If OHR finds probable cause, the case proceeds to a full-fledged administrative adjudication where Complainant has the burden of proving the claims by a preponderance of the evidence.[17] *See Smith*, 77 A.3d at 998; *Grove*, 85 A.3d at 836.

## LEGAL STANDARD: DISPARATE TREATMENT

Under the D.C. Human Rights Act (DCHRA), it is unlawful for an employer to fail or refuse to hire, discharge, or otherwise discriminate against an employee with respect to his or her compensation, terms, conditions, privileges, or promotions, or otherwise adversely to affect his or her status as an employee, "wholly or partially for a discriminatory reason based upon the actual or perceived: race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity or expression, family responsibilities, genetic information, disability, matriculation, or political affiliation of the individual." D.C. Code § 2-1402.11(a) (2016).

The D.C. Court of Appeals looks to the three-part burden shifting analysis articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and federal case law interpreting discrimination under Title VII, to determine whether discrimination has occurred under the DCHRA. *See Cain v. Reinoso*, 43 A.3d 302, 306 (D.C. 2012). Under the *McDonnell Douglas* framework, "the precise requirements of a *prima facie* case can vary depending on the context." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). A claim of discrimination under the disparate treatment theory arises where an employer treats an employee less favorably than others because of his or her status in a protected class. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003).

Generally, the elements of a *prima facie* case of discrimination under the disparate treatment theory, based on indirect evidence, are as follows: (1) Complainant filed based on his or her status in a protected class under the Act; (2) Complainant suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 802; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993); *Little v. D.C. Water & Sewer Auth.*, 91 A.3d 1020, 1027 (D.C. 2014); *Kumar v. D.C. Water & Sewer Auth.*, 25

---

[17] If there is a probable cause finding, OHR will attempt conciliation prior to a full-fledged hearing. *See* D.C. Code § 2-1403.06 (2016).

*Amber Earman v. Sauf Haus Bier Hall – PGS, LLC*
Docket No. 17-156-P(CN)
EEOC No. 10C-2017-00148
Page 17 of 22

A.3d 9, 17 (D.C. 2011); *Hamilton v. Howard Univ.*, 960 A.2d 308, 314 (D.C. 2008); *Furline v. Morrison*, 953 A.2d 344, 358, fn. 24 (D.C. 2008). One method for meeting the final element is for Complainant to identify a similarly situated individual outside of Complainant's protected class who replaced Complainant, or who was retained under similar circumstances to those that led to Complainant's termination. *See McFarland v. George Washington Univ.*, 935 A.2d 337, 352 (D.C.2007) (emphasis and brackets omitted). "[I]ndividuals are similarly situated when they have similar jobs and display similar conduct." *Vasquez v. Cty. of L.A.*, 349 F.3d 634, 641 (9th Cir. 2003); *see also Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir.1998) ("[T]he plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in 'all of the *relevant* aspects.'") (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994)). However, proof of sufficient similarity between Complainant and the proffered comparator is not required at the probable cause stage; the comparator need only be a reasonable comparator. *See, e.g., Grove*, 85 A.3d at 836.

## LEGAL ANALYSIS (ISSUE I)

### I.   The record does not support a finding of probable cause to believe that, between May 5, 2015, and June 8, 2015, Respondent discriminated against Complainant or other female workers based on their sex (female) when it allegedly disparately applied its employee policies to female workers on terms and conditions such as compensation, shift assignment, uniforms, promotion, and discipline.

The record does not support a reasonable claim, and the record does not include evidence to support a reasonable *prima facie* case.

The first element (protected characteristic) is reasonably supported, because Complainant filed her claim based on a characteristic protected by the statute (sex). The second (adverse action) and third (inference of discrimination) elements are not reasonably supported because, contrary to Complainant's assertion that male employees were better paid with better shifts, the record actually indicates that female workers generally received more hours and tips than their male colleagues.[18] With respect to uniforms, OHR has reviewed the record evidence and determined that none of the uniforms, including the dirndl, could reasonably qualify as objectively offensive based on sex.[19] Further, based on Complainant's own representations, there is no evidence that female employees were required to purchase unusual items that would not otherwise be part of a typical wardrobe.[20] Finally, Complainant has provided no evidence that a worker ever told an owner that she lacked, for example jean shorts, and were then told that they had to purchase them.[21]

With respect to promotion and discipline, there is no evidence of female employees being promoted less or disciplined more than their male counter-parts.   First, with respect to Complainant, she was the only non-owner employee promoted to a salaried manager position

---

[18] *See* Pay Chart (OHR File at § V).
[19] *See* Uniform Spreadsheet (OHR File at § IV).
[20] *See id.*
[21] *See* Statement of Complainant (OHR File at § III).

*Amber Earman v. Sauf Haus Bier Hall – PGS, LLC*
Docket No. 17-156-P(CN)
EEOC No. 10C-2017-00148
Page 18 of 22

during the relevant period,.[22]   Second, the investigation revealed no evidence of other female workers, actually being disciplined.[23]   On the contrary, Complainant provided an example of an unreliable (often late or a no show) male bartender, Nikky Hoberman, who was disciplined by taking him off the schedule.[24]   Accordingly, the claim of systemic disparate treatment based on sex is not reasonable, and a hearing is not warranted.[25]

## ADDITIONAL LEGAL STANDARD (ISSUE II): TERMINATION

Generally, the *prima facie* elements in a discriminatory discharge case are that (1) Complainant was a member of a protected class, (2) he was qualified for the job from which he was terminated, (3) the termination occurred despite his employment qualifications, and (4) circumstances exist from which one could reasonably infer that the protected characteristic was a substantial factor in the decision. *See Cain v. Reinoso*, 43 A.3d 302, 306 (D.C. 2012); *Little v. D.C. Water & Sewer Auth.*, 91 A.3d 1020, 1027-28 (D.C. 2014), citing *Kumar v. District of Columbia Water & Sewer Auth.*, 25 A.3d 9, 17 (D.C.2011). *See Ottenberg's Bakers, Inc. v. District of Columbia Comm'n on Human Rights*, 917 A.2d 1094, 1103 (D.C. 2007) (circumstance where the same actor hires and fires an employee permits a non-discriminatory inference); *see also Proud v. Stone*, 945 F.2d 796, 797 (4th Cir., 1991) (where the same actor hires and subsequently disciplines an employee, a strong inference of non-discrimination exists).

## LEGAL ANALYSIS (ISSUE II)

***II. The record does not support a finding of probable cause to believe that Respondent discriminated against Complainant based on her sex (female), when it terminated her from her Events Coordinator/Marketing Director position on June 8, 2015.***

The record does not support a reasonable claim, and the record does not include evidence to support a reasonable *prima facie* case.

The first element (protected characteristic) is reasonably supported, because Complainant filed based on her sex (female).   The second and third elements (qualified and terminated despite qualifications) are arguably not reasonably supported, because, as explained more fully below, Complainant was likely not adequately performing her duties, therefore not qualified.[26]   Finally, as explained below, there exists not a scintilla of information to reasonably support an inference of sex discrimination (the fourth element), and the investigation did not reveal credible, substantial,

---

[22] *See* Statement of Complainant (OHR File at § III).
[23] *See id.*
[24] *See* Complainant's Supplemental Filing, dated March 2, 2018, at para. 2 (OHR File at § IV).
[25] Although Complainant did not assert the water squirting incident in her Charge, OHR has nonetheless considered it and determined that one incident of two employees (one male and one female) each squirting each other with a soda water nozzle from the bar cannot plausibly constitute discriminatory or harassing behavior.   *See* Statement of Complainant at para. 22 (OHR File at § III) (indicating that the super soaker incident occurred only once); *see also* Statement of Witness One at para. 10 (OHR File at § III) (admitting that OT squired her on one occasion but that she squirted him back).
[26] *See* Respondent's Position Statement (OHR File at § V); *see also* Complainant's Rebuttal and Interview (OHR File at § IV).

and probative evidence to contradict Respondent's proffered reason for her termination[27](failure to report for duty for an event she was responsible for managing and coordinating, after previously failing to open the establishment when she was manager on duty and giving her keys to a non-manager).

On the contrary, the record revealed multiple circumstances that could support non-discriminatory inferences, thereby rendering the claim unreasonable. As an initial matter, the record shows that the same decision-makers who hired and promoted Complainant were the decision-makers who fired Complainant.[28] Furthermore, Complainant points to a female worker, Niya Donnelly, an occasional acting manager, who, according to Complainant, committed similar company policy violations as Complainant (such as giving keys to employees, no call / no show, tardy to open on an event day) but was treated more favorably by not being terminated.[29] Therefore, because someone within the protected class was treated more favorably, absent other probative evidence, Complainant's claim that she was terminated because of her sex is not reasonable. Complainant provided Nicky Hoberman, a male bartender, as a comparator who was treated more favorably. However, OHR's investigation revealed that he was disciplined because he was given increasingly fewer hours and eventually essentially terminated based on his unreliability in attendance.[30] Lastly, Complainant was replaced by a female.[31]

Complainant proffered other proffered male comparators who were purportedly treated more favorably than Complainant, but the record does not support Complainant's allegation. First, Complainant advances the owners as comparators.[32] There exists no plausible argument that an owner is reasonably similarly situated to an employee. Next, Complainant advances Mile Dragisic, a non-salaried bartender who would sometimes act as manager on duty, who, according to Complainant, had a penchant for absconding for a midnight repast but was not terminated.[33] First, OHR finds that a non-salaried employee is not reasonably similarly situated to Complainant, a salaried manager. Second, even if their roles were reasonably similar, OHR finds that leaving the premises to get food is likewise not comparable to failing to unlock the premises for an event or not showing up for an event as an Events Manager. Complainant also points to Carmelo, a non-salaried bartender who would purportedly drink and have sex during his shift,[34] but, again, OHR finds a carousing non-salaried bartender not to be reasonably similar to a salaried manager, who was terminated for not being responsible. Ultimately, Complainant, as an events manager,[35] is not

---

[27] OHR notes that Complainant may have actually resigned after being offered a demotion to a bartender and thus the actual adverse action may be demotion rather than termination. *See* Rebuttal at para. 9 (OHR File at § IV).

[28] *See supra Proud v. Stone*, 945 F.2d at 797 (where the same actor hires and subsequently disciplines an employee, a strong inference of non-discrimination exists). *See* Statement of Complainant (OHR File at § III); Respondent's Responses to OHR's Request for Information (OHR File at § V).

[29] *See* Complainant's Supplemental Filing, dated March 2, 2018 (OHR File at § IV).

[30] *See id.*

[31] *See* Respondent's RFI Reponses (OHR File at § V).

[32] *See* Supplemental Filing of Complainant, dated March 2, 2018 (OHR File at § IV).

[33] *See id.* OHR notes that the record indicates that Mile took responsibility for his behavior (*see* text, dated February 8, 2015 (OHR File at § IV), whereas Complainant refuses to acknowledge her part in the situation.

[34] *See* Supplemental Filing of Complainant, dated March 2, 2018 (OHR File at § IV).

[35] Although Complainant acted as a bartender at times, she was ultimately terminated for not reporting for duty as an Events Manager for a scheduled event.

reasonably similarly situated to bartenders or occasional acting bar managers who had behavior problems. For these reasons, the record does not support a *prima facie* case.

Even if it did, despite the self-defeating nature uncovered by OHR's investigation, Respondent asserted a legitimate, non-discriminatory reason (failing to report for duty for an event she was responsible for, after previously not showing up to open the bar and giving her keys to a non-manager). The record does not include credible, substantial, and probative evidence that Respondent's proffered reason was not the actual reason for the adverse action. Complainant admits that she was late to open the bar on September 13, 2014, and gave her keys to her non-manager roommate.[36] Complainant further admits, with respect to the June 5, 2015 band event, that she was drinking heavily over the course of many hours on the evening prior on June 4, 2015, such that she needed help home;[37] and further, that she had agreed to open the doors at 12:30 noon the next day but had not done so by 1:30 pm, while not responding to repeated texts and voice messages from the owners.[38] As such, there exists no evidence, let alone substantial evidence, that Respondent's proffered justification was not the actual reason for the termination. Most significantly, when asked directly by the investigator why Complainant believed she had been terminated, Complainant responded with a litany of explanations, including that she believed that one of the managers was threatened by her because she had more business experience and thought she was trying to take his job, but none of her theories included discrimination based on sex.[39]

Accordingly, the claim is not reasonable, and a hearing is not warranted.

## DETERMINATION

For the foregoing reasons, OHR finds:

I. **NO PROBABLE CAUSE** to believe that, between May 5, 2015, and June 8, 2015, Respondent discriminated against Complainant or other female workers based on their sex (female) when it allegedly disparately applied its employee policies to female workers on terms and conditions such as compensation, shift assignment, uniforms, promotion, and discipline.

II. **NO PROBABLE CAUSE** to believe that Respondent discriminated against Complainant on the basis of her sex (female) when it allegedly discharged her from her employment on June 8, 2015.

---

[36] Although Respondent had indicated the date in question was August 13, 2014, Complainant clarified that she was late on September 13, 2014. *See* Complainant's Rebuttal at para. 5 (OHR File at § IV).
[37] *See* Rebuttal at para. 8 (OHR File at § IV).
[38] *See* Statement of Complainant at para. 14 (OHR File at § III).
[39] *See* Statement of Complainant at para. 11 (OHR File at § III).

*Amber Earman v. Sauf Haus Bier Hall – PGS, LLC*
Docket No. 17-156-P(CN)
EEOC No. 10C-2017-00148
Page 21 of 22

## COMPLAINANT'S RIGHT TO APPLY FOR RECONSIDERATION UNDER THE HUMAN RIGHTS ACT

Complainant may submit a Request for Reconsideration of the No Probable Cause Letter of Determination pursuant to 4 DCMR §§ 720.1 and 720.2. The request should not exceed ten pages and should be submitted to ohr.ogc@dc.gov. The request, along with all supporting documentation, must be submitted in writing to the Director of the Office of Human Rights **within 15 calendar days from the following date:** 5/6/19 . Complainant may submit a Request for Reconsideration on the grounds of newly discovered evidence, misapplication of laws, or misstatement of material facts. The request must be based on one or more of these grounds. Newly discovered evidence is evidence that: (a) is competent, relevant, and material; (b) was not reasonably discoverable before the issuance of this Letter of Determination; and (c) would alter the ultimate outcome in this case. The Request for Reconsideration may be dismissed if the application is: (a) not based on one of the above grounds; or (b) not timely filed. **COMPLAINANT MUST INCLUDE ALL SUPPORTING DOCUMENTATION AND REASONS IN THE ORIGINAL REQUEST FOR RECONSIDERATION.** OHR may forward a copy of any Request for Reconsideration, along with all supporting documentation, to the other party for a Response.

## COMPLAINANT'S RIGHT TO PETITION FOR REVIEW UNDER THE HUMAN RIGHTS ACT

If the Complainant does not file a Request for Reconsideration with OHR, this letter constitutes a final decision of OHR. Complainant has **three years** from the date of service of this decision to file a Petition for Review with the D.C. Superior Court. *Simpson v. D.C. Office of Human Rights*, 597 A. 2d 392, 395 (D.C. 1991) (3 years for private sector complaints).

## RIGHT TO SUBSTANTIAL WEIGHT REVIEW UNDER CROSSFILED FEDERAL STATUTES

The parties have a right to a "Substantial Weight Review" from the U.S. Equal Employment Opportunity Commission (EEOC) of a final agency decision. A no cause finding and a final order after a hearing are final agency decisions. If a party wishes to obtain such a review, please submit the request **within 15 calendar days** of the date of this Letter of Determination provided above to the State and Local Coordinator, Equal Employment Opportunity Commission, Washington Field Office, 131 M Street, NE, Fourth Floor, Suite 4NWO2F, Washington, DC 20507-0100.

*IT IS SO ORDERED.*

Mónica Palacio, Director
District of Columbia Office of Human Rights

*Amber Earman v. Sauf Haus Bier Hall – PGS, LLC*
Docket No. 17-156-P(CN)
EEOC No. 10C-2017-00148
Page 22 of 22

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on ___*5/6/19*___ (date), I

caused OHR's **LETTER OF DETERMINATION** to be served on the following individuals via

___*email*___ (method of delivery):

Amber Earman
amberearman@gmail.com
*Complainant*

Sauf Haus Bier Hall – PGS, LLC
c/o Stephen J. O'Brien
2600 Virginia Avenue NW
Suite 406
Washington, D.C. 20037
sobrien@malliosobrien.com
*Respondent*

OHR Investigator
Mary.wallace@dc.gov

OHR Office of the General Counsel
Ohr.ogc@dc.gov

OHR Investigation Manager
Michelle.Thomas2@dc.gov

Deidra Precia
_____
Name

_____
Signature



Government of the District of Columbia
Mayor Muriel E. Bowser



**Office of Human Rights**
DISTRICT OF COLUMBIA

One Judiciary Square
441 4th Street NW, Suite 570N
Washington, DC 20001
202.727.4559 *tel*
202.727.9589 *fax*
ohr.dc.gov

## DISTRICT OF COLUMBIA
## OFFICE OF HUMAN RIGHTS

-------------------------------------------------x

**AMBER EARMAN,**  )
    **Complainant,**  )
          )
    **v.**  )  **OHR Docket No.:**   **17-156-P(CN)**
          )  **EEOC / HUD No.:**   **10C-2017-00148**
**SAUF HAUS BIER HALL – PGS, LLC,**  )
    **Respondent.**  )

-------------------------------------------------x

## DETERMINATION ON COMPLAINANT'S
## REQUEST FOR RECONSIDERATION

The Office of Human Rights (OHR) received Complainant's May 21, 2019, Request for
Reconsideration (Request) of OHR's May 6, 2019, Letter of Determination (LOD) in the matter
cited above.  Respondent filed an opposition on June 10, 2019.  **Amber Earman** is referred to as
Complainant.  **Sauf Haus Bier Hall – PGS, LLC,** is referred to as Respondent.  For the reasons
explained below, OHR affirms the finding of no probable cause with respect to Issue I, but reverses
the no probable cause finding and orders a hearing with respect to Issue II.

## PROCEDURAL HISTORY

The issues presented in Complainant's Charge of Discrimination, dated October 19, 2016, were
whether there exists probable cause to believe that (I) between May 4, 2015, and June 8, 2015,[1]
Respondent discriminated against Complainant and other female workers with respect to terms
and conditions of employment such as compensation, shift assignment, uniform, promotion, and
discipline, and (II) Respondent discriminated against Complainant based on sex (female) on June
8, 2015, when Respondent terminated her employment following an absence from work on June
5, 2015.  On May 6, 2019, in a Letter of Determination (LOD), OHR found "no probable cause"
on both claims.

With respect to the first issue regarding discrimination against female workers, OHR's
investigation revealed no reasonable evidence to support the claim.  *See* LOD at 17-18.
Specifically, investigatory records did not indicate that female employees received fewer hours or
less desirable shifts, were passed up for promotions, or that they were discriminatorily disciplined
when compared to male employees.  *See id.*  Likewise, the record did not reasonably indicate that
Complainant, in particular, was treated less favorably than male employees.  The record showed
that Complainant was the only non-owner employee promoted to a salaried managerial position,
and the comparators she provided were not reasonably similarly situated to her.  *See id.*  With
respect to the second issue, pertaining to Complainant's termination, OHR also found no probable

---

[1] OHR defined this relevant period based on the year preceding Complainant's May 4, 2016, filing with OHR, pursuant
to the one-year statute of limitations, defined at 4 DCMR § 702.1(a).

*Amber Earman v. Sauf Haus Bier Hall – PGS, LLC*
*OHR Docket No.: 17-156-P(CN)*
*EEOC No.: 10C-2017-00148*
*Determination on Complainant's Request for Reconsideration*
*Page 2 of 9*

cause, because the record indicated that at the time of her termination, Complainant had failed to report for duty and thus was not qualified for her job. *Id.* at 18-20. On May 21, 2019, Complainant filed a Request for Reconsideration ("Request") of OHR's determination. On June 20, 2019, Respondent submitted an Opposition to the Request.

## PARTIES' ARGUMENTS

### A. Complainant's Request

Complainant requests reconsideration on the grounds of misstatement of material facts and newly discovered evidence. Request at 2-3. As a side, Complainant also briefly argues that her termination constitutes retaliation by the employer and that she mentioned this to OHR during intake. *Id.* at 1.

*Misstatement of Facts*

Complainant contends that OHR's LOD contains numerous misstatements of material facts, and argued that:
> (1) the payroll records Respondent provided did not accurately reflect compensation trends over time that were more favorable to men;
> (2) many female employees, including Witness One (female, bartender/administrative assistant) and Witness Two (female, bartender), had complained about the uniforms, contrary to Respondent Owners' statements that there were no complaints;
> (3) Respondent Owner Two's statement that he did not recall giving the office keys to another employee contradicted his subsequent statement that the individual was a bartender, not a manager;
> (4) Respondent Owner Two's statement that he "could come and go as he pleased" contradicted his statement that he "never stepped away from the establishment for any reason";
> (5) Respondent Owner Two's statement that Complainant had to remain on the premises for any event she planned was false;
> (6) Respondent Owner Two's statement that he was unaware of a male employee leaving the premises during his shift as Manager on Duty was false; and
> (7) the conclusion that a male comparator, Nicky Hoberman (bartender), was disciplined for not reporting to work for weeks is not true.

Request at 2-3.

*Newly Discovered Evidence*

Next, Complainant asserts that she obtained newly discovered evidence and attached new evidence such as group texts, emails, and previous communications to OHR. Request at 3-4. In support thereof, Complainant explains that the newly submitted evidence would indicate the following: (1) Owner Two was not truthful with OHR and that he advised Complainant to not report for duty; (2)

*Amber Earman v. Sauf Haus Bier Hall – PGS, LLC*
*OHR Docket No.: 17-156-P(CN)*
*EEOC No.: 10C-2017-00148*
*Determination on Complainant's Request for Reconsideration*
*Page 3 of 9*

Complainant's claims were consistent throughout the investigation; and (3) facts[2] to which Witness One "would attest." *Id.* at 3.

## B. Respondent's Opposition to the Request

Respondent opposes the Request, contending that the OHR investigation was thorough and that the Request should be denied because Complainant failed to show her "new evidence" was not "available" during the investigation. Opposition at 2. Additionally, it argues that the "new evidence" actually corroborates Respondent's position because it shows that Complainant was "sorry" for failing to "[satisfy] her duties." *Id.* Respondent further maintains that the Request should be denied because subsequent successors to Complainant were women. *Id.*

## APPLICABLE LEGAL STANDARDS

Pursuant to 4 DCMR § 720.1, a party seeking reconsideration shall submit a written application stating specifically the grounds upon which the request for reconsideration is based. Those grounds are "limited to misapplication of law, material misstatement of fact, or discovery of evidence not available during the investigation." *Id.* at § 720.1.[3] The request must be submitted within 15 calendar days from receipt of the letter of determination. *Id.* at 720.2.

## OHR'S ANALYSIS

Complainant filed her Request on May 21, 2019, within 15 days of OHR's LOD, pursuant to 4 DCMR § 720.2; thus the Request is timely.

Upon review of the Request, OHR finds that the Request has not established the standard for reconsideration, pursuant to 4 DCMR § 720.1, with respect the allegations of misstatement of material facts or newly acquired evidence not available during the investigation. However, OHR finds *sua sponte* that OHR misapplied the law with regard to Issue II involving Complainant's termination. Therefore, OHR finds that a hearing is warranted with respect to this issue. A detailed analysis of these claims in addition to Complainant's belated retaliation claim are discussed below.

### A. Misstatement of Material Facts

Complainant moves for reconsideration based on alleged misstatement of material facts by OHR, but Complainant doesn't actually allege misstatement of facts. The Request merely argues with or contends that there are factual arguments against statements made by witnesses. In other words,

---

[2] Complainant claims that Witness One "would attest" to being disciplined less favorably compared to male employees, that male comparator Nicky Hoberman was not, in fact, disciplined after not showing up for work, and that "Owner Three" took Complainant and Witness One out drinking on the night of June 4, prior to the day on which Complainant is alleged to have not showed up for work to open the facility. *See* Request at 3, ¶¶ 3-5.

[3] In addition to being unavailable during the investigation, any proffered newly discovered evidence would generally need to be material and to affect the probable cause finding. *Cf.* 4 DCMR §§ 433.2, 120.5 (newly discovered evidence standard at the hearing stage requiring materiality and that the evidence would alter the result); *see also Grove v. Loomis Sayles & Co.*, 85 A.3d 832, 836 (D.C. 2014) (evidence must be credible, substantial, and probative).

*Amber Earman v. Sauf Haus Bier Hall – PGS, LLC*
*OHR Docket No.: 17-156-P(CN)*
*EEOC No.: 10C-2017-00148*
*Determination on Complainant's Request for Reconsideration*
*Page 4 of 9*

Complainant appears to be providing rebuttal information to the statements made by witnesses, rather than claiming that OHR made any misstatement of fact. Complainant was provided opportunities to provide rebuttal information during the investigation. Thus, these arguments are not viable bases for a reconsideration. As part of her misstatement allegation, Complainant also argues that OHR should have obtained more exhaustive information on the payroll record. Although none of these indicates a misstatement of fact by OHR, OHR provides a courtesy response to each of Complainant's assertions.

### 1. Payroll Records (Request at 2, ¶1)

Complainant maintains that OHR should have obtained more comprehensive payroll data than a sample of a few pay periods. Request at 2, ¶1. She maintains that obtaining more data would show favorable treatment of men. *Id.* However, Complainant points to no specific reason why she speculates that a more comprehensive payroll would indicate discriminatory treatment. *Id.* Although OHR did not obtain exhaustive payroll records for all employees, the information collected from four pay periods (August and November 2014, January, February, April, and May 2015), did not reasonably indicate a preference or disparate treatment based on sex.[4] On the contrary, during two of the four pay periods, a female bartender received the most shift hours.[5] With respect to promotions and Complainant, the record supports and Complainant does not deny that she was the first employee promoted to a salaried position.[6] In terms of shifts, as OHR explained in the LOD, Complainant, as a salaried manager, could not reasonably claim that she was treated less favorably in the assignment of bartending shifts because she admits that she, as a manager, only worked occasional bartending shifts and was not a full-time bartender.[7]

### 2. Complaints regarding Female Bartender Uniforms (Request at 2, ¶2)

Complainant objects to the veracity of Respondent Owner One's statement that there were no complaints from female employees being asked to wear a dirndl. She points to two female witnesses stating to the contrary. Again, this does not indicate that OHR misstated facts as the statement at issue is a summary of the witness' statement made during OHR's investigation and not an adoption of fact by OHR.[8]

---

[4] *See* Payroll Records, dated August 29, 2014, November 21, 2014, February 13, 2015, and May 8, 2015 (OHR File at §V).

[5] *See id.*

[6] *See* Statement of Complainant (OHR File at § III).

[7] *See* LOD at 19-20.

[8] OHR notes that Respondent may have required female employees to exclusively wear dirndls as uniforms from September 2014 to January 2015, a period outside the actionable period in this case (May 4, 2015 and later). *See* Information on Female Uniforms (OHR File at § IV) (female employees may have had the option to wear a soccer jersey and jeans during a part of this time, but that the manager on duty had to approve this alternative uniform. In January 2015, female employees were offered the option to wear a button-down shirt and jeans in lieu of the dirndl). OHR also notes that it originally found this requirement not to be objectively offensive, but upon review, as discussed *infra*, this requirement could reasonably qualify as objectively offensive.

Amber Earman v. Sauf Haus Bier Hall – PGS, LLC
OHR Docket No.: 17-156-P(CN)
EEOC No.: 10C-2017-00148
Determination on Complainant's Request for Reconsideration
Page 5 of 9

### 3. Objections to Respondent Owner Two's Statements ((Request at 2, ¶¶ 3-6)

Complainant objects to statements made by Respondent Owner Two and avers that she has differing information or that a witness could provide contradicting information.[9]  Either way, it does not indicate that OHR made misstatement of facts.  Rather, OHR merely summarized the statements of all witnesses and considered all available evidence, as *Smith* requires.[10]

### 4. Male Comparator (Request at 3, ¶7)

Complainant questions OHR's conclusion that Respondent had disciplined Mr. Hoberman (a male comparator) for his unreliable attendance because the conclusion was based allegedly on statements made by a witness who is not credible.[11]  Yet, Complainant's proffered male comparator, Nicky Hoberman, was not reasonably similarly situated to Complainant and thus cannot reasonably support Complainant's claim of disparate treatment.[12]  While it is not clear at what point Mr. Hoberman was taken off the schedule, he is nonetheless not a reasonably similarly situated employee to Complainant because he was a bartender, paid hourly, and had repeatedly showed up late or not at all to his shifts;[13] whereas, by contrast, Complainant was an Events Manager and Marketing Director, earning a salary, and was terminated after not showing up at the agreed upon time to open the facility for an event that she was purportedly managing.[14]  Thus, because both their positions and the nature of their purported performance problems were not reasonably similarly situated, even if Mr. Hoberman had not been disciplined, those circumstances would not support a plausible claim of discrimination on the basis of sex.[15]

For the above reasons, OHR concludes that Complainant has not proffered a misstatement of material fact warranting reconsideration.

---

[9] *See* Request at 1-2.

[10] OHR's duty at the probable cause stage is to "consider all the evidence and allegations to determine whether [Complainant's] claims [are] 'reasonable' and make out a *prima facie* case under the Human Rights Act."  *Smith v. D.C. Office of Human Rights*, 77 A.3d 980, 997-98 (D.C. 2013)

[11] *See* Request at 3, ¶ 7.

[12] One method for meeting the final element of a disparate treatment claim is for Complainant to identify a similarly situated individual outside of Complainant's protected class who replaced Complainant, or who was retained under similar circumstances to those that led to Complainant's termination.  *See McFarland v. George Washington Univ.*, 935 A.2d 337, 352 (D.C. 2007) (emphasis and brackets omitted).  "[I]ndividuals are similarly situated when they have similar jobs and display similar conduct." *Vasquez v. Cty. of L.A.,* 349 F.3d 634, 641 (9th Cir. 2003); *see also Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir.1998) ("[T]he plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in 'all of the *relevant* aspects.'") (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994)).

[13] Complainant's Supplemental Filing, dated March 2, 2018 (OHR File at § IV).

[14] *See* Statement of Complainant, dated September 8, 2017 (OHR File at § III).

[15] One method of establishing the final element is by comparison to an individual who does not share Complainant's protected characteristic, but who is treated more favorably under similar circumstances.  *See, e.g., O'Donnell v. Associated General Contractors of America, Inc.* 645 A.2d 1084, 1088 (D.C. 1994).  OHR's task at the probable cause stage is to analyze whether the comparison could reasonably support an inference of discrimination based on the applicable protected characteristic, given the facts and circumstances of the particular case.

*Amber Earman v. Sauf Haus Bier Hall – PGS, LLC*
*OHR Docket No.: 17-156-P(CN)*
*EEOC No.: 10C-2017-00148*
*Determination on Complainant's Request for Reconsideration*
*Page 6 of 9*

### B.  Newly Discovered Evidence

In this section of her Request, Complainant attempts to offer information which a witness could attest to and produced new documents reflecting text messages between herself and the Respondent owners.  Request at 3, ¶¶ 1-5.  Unfortunately, the Request fails to indicate that the new information was not available during the investigation.  *See* 4 DCMR § 720.1 (one of the grounds for reconsideration is "discovery of evidence not available *during the investigation*") (emphasis added).[16]

### C.  Belated Retaliation Claim

Complainant opens her Request by insisting that she was subjected to unlawful discrimination based on sex and that she suffered from termination "possibly as retaliation."  Request at 1, ¶ 2. She points to her initial Intake Questionnaire filed with OHR as evidence of this allegation.  *Id.* OHR reviewed the entire investigation record and found that Complainant was aware OHR was not investigating a retaliation claim throughout various points.  For starters, at an early point in the process, in or around July 2016, after her intake interview, Complainant was made aware that OHR would not be investigating a "retaliation claim".[17]  Likewise, on October 19, 2016, when she reviewed and signed the Charge of Discrimination, Complainant was aware that the Charge did not allege a retaliation claim.[18]   The record also indicates that Complainant frequently communicated with OHR and at no point did she raise that she suffered the termination as a result of termination.[19]  Notably, Complainant has not identified a protected activity which could form the basis of a retaliation claim.[20]  For these reasons, OHR finds that Complainant's retaliation claim is time barred and not appropriate for consideration by OHR.

### D.  Misapplication of the Law

Notwithstanding all of the foregoing, upon a secondary review of the record, OHR finds that it misapplied the law in this case with respect to Issue II on termination of Complainant. Specifically, a *prima facie* case is reasonably supported, because Complainant filed based on a characteristic protected by the statute (sex), was subjected to the adverse action of termination (second element), and there exist circumstances from which one could reasonably infer that sex may have been a

---

[16] Although such evidence may not be considered at the probable cause stage, OHR notes that it may be presented at any hearing.  *See* 4 DCMR § 422 (evidence at hearing); *Smith v. D.C. Office of Human Rights*, 77 A.3d 980, 997-98 (D.C. 2013) (If OHR finds probable cause, the case proceeds to a full-fledged administrative adjudication where Complainant has the burden of proving the claims by a preponderance of the evidence.  If there is a probable cause finding, OHR will attempt conciliation prior to a full-fledged hearing.  *See* D.C. Code § 2-1403.06 (2016).

[17] OHR File at § II (intake notes).

[18] *See* Charge of Discrimination, dated October 19, 2016 (OHR File at § II).

[19] *See generally* OHR File at § III (correspondence).

[20] "To constitute 'protected activity,' the complaint must allege an employment practice that is prohibited by the DCHRA.  It is not enough for an employee to object to favoritism, cronyism, violation of personnel policies, or mistreatment in general, without connecting it to membership in a protected class, for such practices, however repugnant they may be, are outside the purview of the DCHRA." *Vogel v. D.C. Office of Planning*, 944 A.2d 456, 464 (D.C. 2008).  When describing her conversations with the Owners, Complainant does not indicate that she ever complained about sex discrimination.  *See generally* Statement of Complainant (OHR File at § III).

*Amber Earman v. Sauf Haus Bier Hall – PGS, LLC*
*OHR Docket No.: 17-156-P(CN)*
*EEOC No.: 10C-2017-00148*
*Determination on Complainant's Request for Reconsideration*
*Page 7 of 9*

factor (third element).  With respect to the third element, when considering all of the evidence, including the arguably demeaning dirndl required of women,[21] the sexualized work environment, including sexual activity and the super-soaker incident,[22] an alleged discriminatory statement,[23] as well as evidence to contradict Respondent's proffered explanation for the termination,[24] a reasonable inference of sex discrimination is reasonably supported at this preliminary stage.[25] Significantly, Complainant need not prove her claim at the probable cause stage. *See Smith*, 77 A.3d at 997.  Although Respondent purports that Complainant was terminated for failing to open the establishment on June 3, 2015, the record includes sufficient contradictory evidence (Respondent's role in Complainant's drinking, the paucity of a written disciplinary history, and a general culture of irresponsibility among the owners and at the establishment)[26] to warrant a hearing.  Accordingly, reconsideration and a hearing are warranted with respect to Issue II.

**CONCLUSION**

Therefore, OHR:

> **GRANTS** Complainant's Request, with respect to Issue II on termination,
>
> **AFFIRMS** the finding with respect to Issue I, and further
>
> **ORDERS** the parties to conciliate this matter promptly.

**IT IS SO ORDERED.**

Michelle M. Garcia
_____
Michelle Garcia, Interim Director
District of Columbia Office of Human Rights

---

[21] OHR File at § IV.

[22] Statements of Complainant, Witness One, Witness Two (OHR File at § III).

[23] In a supplemental filing to OHR, dated January 10, 2018, Complainant contends that one of the owners told her, "We've never had a female manager before . . . but we'll give you a shot."  OHR File at § IV.

[24] For example, Respondent appears to have obscured the circumstances surrounding Complainant's termination, including the events the night before the June 5, 2015, incident.  Significantly, Respondent proffered in its position statement (pg. 2, OHR File at § V) that it learned "from reliable sources" that Complainant had been out drinking the night before, but Complainant explains that the owners had taken her out drinking, (Statement of Complainant, OHR File at § III).  It also appears that Respondent may have failed to provide OHR with all of the pertinent facts of the June 5, 2015, incident, including that Respondent instructed Complainant not to come to work that day.  *See* Respondent's Position (OHR File at § V); Statement of Complainant (OHR File at § III); Complainant's Rebuttal (OHR File at § IV).

[25] Generally, the elements of a *prima facie* case of discrimination under the disparate treatment theory, based on indirect evidence, are as follows: (1) Complainant filed based on his or her status in a protected class under the Act; (2) Complainant suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.  *See Little v. D.C. Water & Sewer Auth.*, 91 A.3d 1020, 1027 (D.C. 2014).

[26] Complainant's Rebuttal (OHR File at § IV); Statements of Complainant, Witnesses One and Two (OHR File at § III).

*Amber Earman v. Sauf Haus Bier Hall – PGS, LLC*
*OHR Docket No.: 17-156-P(CN)*
*EEOC No.: 10C-2017-00148*
*Determination on Complainant's Request for Reconsideration*
*Page 8 of 9*

## CONCILIATION

The parties are Ordered to contact the Mediation Unit via e-mail at ohr.mediation@dc.gov, or U.S. post to 441 4th St., NW, Suite 570N, Washington, DC 20001, or by calling 202.727.4559, within fifteen (15) calendar days after receipt of this Determination, to schedule mandatory conciliation pursuant to D.C. Code § 2-1403.06(b). If conciliation is unsuccessful, OHR will process this case for a public hearing before the District of Columbia Commission on Human Rights. The public hearing is *de novo* and presided over by an Administrative Law Judge. A filing with OHR represents an election of remedies after the Director makes a determination on the merits, and a cause finding may not be removed or appealed to Superior Court; a final order of the Commission may be appealed to the D.C. Court of Appeals. *See Brown v. Capitol Hill Club*, 425 A.2d 1309, 1311 (D.C. 1981) (clarifying election of remedies and preclusion); D.C. Code § 2-1403.06 (certification to the Commission after a cause finding); and 2-1403.14 (appeal of an order of the Commission).

*Amber Earman v. Sauf Haus Bier Hall – PGS, LLC*
*OHR Docket No.: 17-156-P(CN)*
*EEOC No.: 10C-2017-00148*
*Determination on Complainant's Request for Reconsideration*
**Page 9 of 9**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on _____ 3/25/20 _____ (date), I

caused OHR's **Order on Complainant's Request for Reconsideration** to be served on the

following individuals via _____ email _____ (method of delivery):

Amber Earman
448 Walton Avenue, # 675
Hummelstown, PA 17036
amberearman@gmail.com
*Complainant*

Sauf Haus Bier Hall – PGS, LLC
c/o Stephen J. O'Brien
2600 Virginia Avenue, N.W., Suite 406
Washington, D.C. 20037
sobrien@malliosobrien.com
*Respondent*

OHR Human Rights Officer
Mary.wallace@dc.gov

OHR Office of the General Counsel
Ohr.ogc@dc.gov

OHR Enforcement Manager
Ohr.EnforcementGreen@dc.gov

OHR Mediation Unit
Ohr.mediation@dc.gov

| | |
|---|---|
| Deidra Precia | *Deidra Precia* |
| Name | Signature |

DISTRICT OF COLUMBIA
OFFICE OF HUMAN RIGHTS

------------------------------------------------x

AMBER EARMAN,　　　　　　　　)
　　　　　Complainant　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　v.　　　　　　　　　　　　)　　OHR Docket No.: 17-156-P(CN)
　　　　　　　　　　　　　　　　　)　　EEOC No.: 10C-2017-00148
　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
SAUF HAUS BIER HALL – PGS, LLC, )
　　　　　Respondent.　　　　　　　　)
------------------------------------------------x

## DETERMINATION ON RESPONDENT'S
## REQUEST FOR RECONSIDERATION

The Office of Human Rights (OHR) received Respondent's April 8, 2020 Request for Reconsideration (Request) of OHR's March 25, 2020 Determination on Complainant's Request for Reconsideration in the matter cited above. Complainant filed an opposition on April 17, 2020. **Amber Earman** is referred to as Complainant. **Sauf Haus Bier Hall, PGC, LLC** is referred to as Respondent. For the reasons explained below, OHR will **grant** Respondent's Request, **vacate in part** its March 25, 2020 Order, and **affirm** the findings in its May 6, 2019 Letter of Determination.

## PROCEDURAL HISTORY

The issues presented in Complainant's Charge of Discrimination, dated October 19, 2016, are whether there exists probable cause to believe that (1) Respondent discriminated against Complainant and other female workers with respect to terms and conditions of employment such as compensation, shift assignment, uniform, promotion, and discipline between May 4, 2015 and June 8, 2015; and (2) Respondent subjected Complainant to discrimination based on sex (female) on June 8, 2015, when Respondent terminated her employment following an absence from work on June 5, 2015. On May 6, 2019, in a Letter of Determination (LOD), OHR found "no probable cause" on both claims.

As to the first issue, OHR's investigation revealed no reasonable evidence to support Complainant's claim that Respondent discriminated against her and other female workers with respect to terms and conditions of employment because the record revealed female employees did not receive fewer hours or less desirable shift, disparate promotion outcomes, or different disciplinary outcomes compared to male employees; nor did the record indicate Complainant was treated less favorably than male employees. *See* LOD at 17-18. Indeed, the record revealed

*Amber Earman v. Sauf Haus Brief Hall – PGS, LLC*
OHR Docket No.: 17-156-P(CN)
EEOC No.: 10C-2017-00148
*Determination on Respondent's Request for Reconsideration*
*Page 2 of 8*

Complainant was the only non-owner employee promoted to a salaried managerial position, and the comparators she proffered were not reasonably similarly situated to her. *Id.*

Regarding the second issue, Complainant's termination, OHR found no probable cause because the record indicated that at the time of her termination, Complainant had failed to report for duty and thus was not qualified for her job. LOD at 18-20.

On May 21, 2019, Complainant filed a Request for Reconsideration ("Complainant's Request") in which she requested reconsideration based on: (1) misstatements of material facts, *see* Compl. Req. at 2-3; (2) newly discovered evidence, *see id.* at 3.[1]

On June 20, 2019, Respondent submitted an Opposition to Complainant's Request ("Respondent's Opposition") asserting that (1) OHR meticulously documented all material facts, referring to evidence throughout the investigation; (2) the "new evidence" Complainant submits was a text exchange with one of Respondent's owners on June 5, 2015 – the day she failed to report to work – which was available during the investigation and supports Respondent's version of events; and (3) Complainant's successors were female. Resp't Opp'n at 1-2.

On March 25, 2020, OHR issued its Determination on Complainant's Request for Reconsideration ("Order"). OHR found reconsideration was not warranted based on all grounds Complainant proffered for reconsideration. Order at 3-6. Although OHR rejected all grounds Complainant expressly raised for reconsideration, OHR found Complainant proffered evidence that could show OHR misapplied the law regarding the issue of Complainant's termination, in the following terms:

> Notwithstanding all of the foregoing, upon a secondary review of the record, OHR finds that it misapplied the law in this case with respect to Issue II on termination of Complainant. Specifically, a *prima facie* case is reasonably supported, because Complainant filed based on a characteristic protected by the statute (sex), was subjected to the adverse action of termination (second element), and there exist circumstances from which one could reasonably infer that sex may have been a factor (third element). With respect to the third element, when considering all of the evidence, including the arguably demeaning dirndl required of women, the sexualized work environment, including sexual activity and the super-soaker incident, an alleged discriminatory statement, as well as evidence to contradict Respondent's proffered explanation for the termination, a reasonable inference of sex discrimination is reasonably supported at this preliminary stage. Significantly, Complainant need not prove her claim at the probable cause stage. *See Smith*, 77 A.3d at 997. Although Respondent purports that Complainant was terminated for failing to open the establishment on June 3, 2015, the record includes sufficient contradictory evidence (Respondent's role in Complainant's

---

[1] In her Request, Complainant also alleged (for the first time) she suffered termination "possibly as retaliation." Compl. Req. at 1. OHR expressly rejected this argument. *See* Order at 6.

drinking, the paucity of a written disciplinary history and a general culture of irresponsibility among the owners and at the establishment) to warrant a hearing. Accordingly, reconsideration and a hearing are warranted with respect to Issue II.[2]

Order at 6-7 (internal citations omitted). OHR thus granted Complainant's Request, with respect to "Issue II" (termination), affirmed its finding as to "Issue I" (terms and conditions of employment), and ordered the parties to "conciliate this matter promptly." *Id.* at 7.

On April 8, 2020, Respondent submitted a Request for Reconsideration ("Respondent's Request") asking OHR to reconsider the "probable cause" finding contained in its March 25, 2020 Order. On April 17, 2020, Complainant submitted her Opposition to Respondent's Request for Reconsideration ("Complainant's Opposition"). On April 20, 2020, Complainant submitted a Supplemental Filing to Complainant's Opposition ("Complainant's Supplement"). On April 20, 2020, Respondent submitted a Reply to Complainant's Opposition ("Respondent's Reply").

## PARTIES' ARGUMENTS

### A. Respondent's Request

Respondent requests reconsideration, asserting that OHR misapplied both procedural and substantive law in belatedly *sua sponte* finding "probable cause" of discrimination as to termination in its March 25, 2020 Order. Resp't Req. at 2. Respondent states OHR's March 25, 2020 Order explicitly rejected both grounds Complainant asserted for reconsideration: misstatement of fact and newly discovered evidence; however, OHR reversed the initial LOD's finding *sua sponte* and substituted the finding that Complainant established a *prima facie* case of discrimination as to Complainant's termination. *Id.* Respondent indicates OHR offered no statutory or regulatory basis for reversing its LOD on grounds not asserted in Complainant's Request. *Id.*

First, Respondent asserts OHR ignored its own regulations in reversing its original "no probable cause" finding *sua sponte* on grounds not asserted by Complainant. *Id.* at 3. Respondent indicates the only grounds for reconsideration are misapplication of law, misstatement or fact, and discovery of previously unavailable evidence, and OHR rejected the only two such grounds Complainant asserted in her Request. *Id.* (citing 4 DCMR § 720.1). Respondent proffers that since 4 DCMR § 720.4 establishes the Director "shall" affirm the original no probable cause finding if the Director concludes that "the complainant has not presented evidence" that would

---

[2] The March 25, 2020 Order failed to consider whether Complainant was qualified. Generally, the *prima facie* elements of a discriminatory discharge claim, which are: (1) Complainant was a member of a protected class, (2) she was qualified for the job, (3) she was terminated despite her qualifications, and (4) circumstances exists from which one could reasonably infer that the protected characteristic was a substantial factor in the decision. *See Cain v. Reinoso*, 43 A.3d 302, 306 (D.C. 2012), *cited in* LOD at 18. The LOD determined Complainant was "likely not adequately performing her duties, therefore not qualified." *Id.* However, the March 25, 2020 Order was silent on the issue. Order at 6-7.

*Amber Earman v. Sauf Haus Brief Hall – PGS, LLC*
*OHR Docket No.: 17-156-P(CN)*
*EEOC No.: 10C-2017-00148*
*Determination on Respondent's Request for Reconsideration*
*Page 4 of 8*

warrant changing it, Complainant's failure to articulate grounds for reconsideration should be "the end of it," since the plain language of the language precludes *sua sponte* reversal. *Id.*

Second, Respondent indicates OHR's regulations required it to refer the matter for further investigation upon reversal of a "no probable cause" finding instead of finding "probable cause" in the Order itself. *Id.* at 4 (citing 4 DCMR § 720.5 ("the complaint *shall* be reopened for further investigation") (emphasis added)).

Third, Respondent contends OHR lacks authority to reverse its original "no probable cause" finding *sua sponte*. *Id.* Respondent indicates that, although 4 DCMR § 120.12 provides for *sua sponte* reconsideration in government cases, there is no such analogous provision in private employment discrimination cases. *Id.* at 4-5. Respondent proffers that the canons of statutory and regulatory construction establish that the express inclusion of this provision in Chapter 100 implies its exclusion from Chapter 700 of the regulations. *Id.* at 5 (internal citations omitted).

Finally, Respondent asserts that OHR erred substantively in concluding there was probable cause to believe Complainant's termination was discriminatory because it was uncontroverted that Complainant's replacement – and her replacement's replacement – were both women. *Id.* at 5-6.

### B.  **Complainant's Opposition**

Complainant asserts that following OHR's March 25, 2020 Order, the parties have no further right to reconsideration, so Respondent's Request should be denied and the case should proceed to conciliation. Comp. Opp'n at 1.

### C.  **Complainant's Supplement**[3]

Complainant first contends that 4 DCMR § 720.9 permits OHR to reverse a prior dismissal where "after further investigation," the Director "find[s] probable cause to credit the complaint." Compl. Supp. at 1. Regarding Respondent's substantive arguments, Complainant asserts she need not prove her claim by the preponderance of the evidence at the probable cause stage and the fact she was replaced by another woman does not negate the other evidence of record raising an inference of discrimination. *Id.* at 2. Complainant indicates the regulations do not permit Respondent to submit a second request for reconsideration. *Id.*

---

[3] OHR requested Complainant's opposition by "close of business on **April 20, 2020**," *see* OHR E-Mail to Complainant dated April 10, 2020, and Complainant submitted her Supplement to OHR by-email at 5:01 p.m. on April 20, 2020. *See also* OHR E-Mail to Parties dated April 27, 2020 (OHR File at § III).

*Amber Earman v. Sauf Haus Brief Hall – PGS, LLC*
OHR Docket No.: 17-156-P(CN)
EEOC No.: 10C-2017-00148
*Determination on Respondent's Request for Reconsideration*
Page 5 of 8

D. **Respondent's Reply**[4]

Respondent contends that OHR's Operating Procedures do not have force of law.  Reply at 1.
Respondent characterizes Complainant's Opposition as arguing that Complainant is entitled to
reconsideration, but Respondent is not.  *Id.*

## APPLICABLE LEGAL STANDARDS

Pursuant to 4 DCMR § 720.1, a party seeking reconsideration shall submit a written application
to the Director of OHR, stating specifically the grounds upon which the request for
reconsideration is based.  Those grounds are "limited to misapplication of law, material
misstatement of fact, or discovery of evidence not available during the investigation."  *Id.* at §
720.1.[5]  The request must be submitted within fifteen (15) calendar days of receipt of the letter of
determination. *Id.* at 720.2.

Under 4 DCMR § 720.4, if "after review of a timely-filed application for reconsideration and the
response thereto, the Director concludes that the complainant has not presented evidence that
would warrant change, modification, or reversal for the prior dismissal, the Director shall affirm
the original no probable cause finding."  On the other hand, if the Director "concludes that the
complainant has provided sufficient evidence to raise a genuine issue of law or fact, the
complainant shall be reopened for further investigation."  4 DCMR § 720.5.  If the respondent
"adequately refutes the allegations presented" in the complainant's request for reconsideration,
"the prior dismissal shall be affirmed and the parties notified."  4 DCMR § 720.6.

## OHR'S ANALYSIS

Respondent's Request was timely filed; it was received on April 8, 2020, within fifteen (15) days
of OHR's March 25, 2020 Order.

As a threshold issue, OHR finds Respondent's Request is procedurally justified because OHR's
March 25, 2020 Order was the parties' first notice of a "probable cause" finding.  Respondent
correctly asserts that its first and only procedural opportunity to seek reconsideration of OHR's
"probable cause" finding as to Complainant's termination was the March 25, 2020 Order.  *See*
Resp't Req. at 2; *see also* 4 DCMR § 716.3 ("If probable cause is found, the respondent shall
have fifteen (15) calendar days to file for reconsideration").  This probable cause finding,
regardless of its form, entitled Respondent to a procedural opportunity to request reconsideration.

Respondent's Request raises adequate grounds for reconsideration based on "misapplication of
law."  4 DCMR § 716.3; *see also* Resp't Req. at 3.  Respondent's Request is granted because the

---

[4] OHR did not request a Reply, but Respondent submitted it within minutes of Complainant's Supplement.  Upon
receipt, OHR informed both parties it would accept no further pleadings and instructed them to await its Order.  *See*
OHR E-Mail to Parties dated April 27, 2020 (OHR File at § III).
[5] Newly discovered evidence is evidence that is material, was not reasonably available during the investigation, and
would alter the ultimate outcome of the probable cause determination.

*Amber Earman v. Sauf Haus Brief Hall – PGS, LLC*
*OHR Docket No.: 17-156-P(CN)*
*EEOC No.: 10C-2017-00148*
*Determination on Respondent's Request for Reconsideration*
*Page 6 of 8*

March 25, 2020 Order misapplied OHR's regulations in two ways: (1) it engaged in a *sua sponte* reversal of the LOD finding after expressly determining that Complainant did not raise adequate grounds for reconsideration; and (2) it failed to reopen for further investigation.

First, although OHR correctly found Complainant did not correctly plead a "misstatement of fact" or "newly discovered evidence," the only grounds for reconsideration Complainant pleaded in her request, *see* Compl. Req. at 2-3; Order at 3-6; 4 DCMR § 720.1, OHR nonetheless reversed its "no probable cause" finding as to Complainant's termination (Issue II) *sua sponte*, based on "misapplication of law." While "misapplication of law" is an enumerated ground for reconsideration under 4 DCMR § 720.1 (the "grounds shall be limited to misapplication of law, material misstatement of fact, or discovery of evidence not available during the investigation"), Respondent correctly asserts that OHR's regulations require the party moving for reconsideration – here, the Complainant – to raise it, *see* 4 DCMR § 720.2 ("If *the request* is not based on one of the grounds cited in § 720.1, […] the Director *shall* reject the application for reconsideration") (emphasis added). Here, Complainant failed to raise "misapplication of law" as a basis of her request for reconsideration.

Additionally, the March 25, 2020 Order failed to reopen and remand the case for further investigation as to Issue II. *See* Order at 6-7; *compare to* 4 DCMR § 720.1 ("*shall* be reopened for further investigation") (emphasis added). However, since OHR has determined its *sua sponte* finding of "misapplication of law" was in error, it affirms the findings in its LOD and need not remand for further investigation.

Accordingly, OHR **vacates** its March 25, 2020 Order as to the "probable cause" finding on Issue II (termination); the Order's disposition of Issue I (terms and conditions of employment) is **affirmed**.

**CONCLUSION**

Therefore, OHR:

    **GRANTS** Respondent's Request, and further

    **AFFIRMS** its March 20, 2020 Order as to its findings that Complainant did not adequately plead "misstatement of fact" or "newly discovered evidence," and further

    **VACATES** its March 20, 2020 Order as to the *sua sponte* finding of "misapplication of law" and its "probable cause" finding on Issue II (termination) and its order that the parties attend conciliation, and further

*Amber Earman v. Sauf Haus Brief Hall – PGS, LLC*
*OHR Docket No.: 17-156-P(CN)*
*EEOC No.: 10C-2017-00148*
*Determination on Respondent's Request for Reconsideration*
*Page 7 of 8*

**AFFIRMS** the May 6, 2019 Letter of Determination.[6]


**IT IS SO ORDERED.**


*Michelle M. Garcia*

Michelle M. Garcia, Interim Director
District of Columbia Office of Human Rights

---

[6] Having affirmed the Letter of Determination (LOD) in its entirety, and having rejected all grounds for reconsideration Complainant raised in her May 21, 2019 Request, OHR clarifies that no further requests for reconsideration of the initial LOD shall be accepted.

*Amber Earman v. Sauf Haus Brief Hall – PGS, ELC*
*OHR Docket No.: 17-156-P(CN)*
*EEOC No.: 10C-2017-00148*
*Determination on Respondent's Request for Reconsideration*
*Page 8 of 8*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on _____9/25/20_____ (date), I

caused OHR's **Order on Respondent's Request for Reconsideration** to be served on the

following individuals via _____email_____ (method of delivery):

> Amber Earman
> 448 Walton Avenue, #675
> Hummelstown, PA 17036
> amberearman@gmail.com
> ***Complainant***
>
> Sauf Haus Bier Hall – PGS, LLC
> c/o Stephen J. O'Brien
> 2600 Virginia Avenue, N.W., Suite 406
> Washington, DC 20037
> sobrien@malliosobrien.com
> ***Respondent***
>
> OHR Human Rights Officer
> Mary.Wallace@dc.gov
>
> OHR Enforcement Manager
> OHR.EnforcementGreen@dc.gov
>
> OHR Office of the General Counsel
> Ohr.ogc@dc.gov
>
> OHR Mediation Unit
> Ohr.mediation@dc.gov

_____Deidra Precia_____          *Deidra Precia*
Name                                Signature

AO 440 (Rev. 06/12; DC 3/15)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Columbia    ☑

|  |  |
|---|---|
| Amber Earman | ) ) ) ) ) |
| *Plaintiff(s)* | ) |
| v. | ) ) ) ) |
| Sauf Haus Bier Hall- PGS L.L.C. | ) ) ) ) |
| *Defendant(s)* | ) |

Case: 1:20−cv−03850
Assigned To : Jackson, Ketanji Brown
Assign. Date : 12/23/2020
Description: Employ. Discrim. (H−DECK)

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Sauf Haus Bier Hall- PGS L.L.C.
1216 18th Street, N.W.
Washington, DC 20036

c/o Stephen J. O ' Brien
2600 Virginia Avenue, N.W., Suite 406
Washington, D.C. 20037

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Amber Earman
448 Walton Ave, #675
Hummelstown, PA 17036

amberearman@gmail.com

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

ANGELA D. CAESAR, CLERK OF COURT

Date:  **DEC 3 0 2020**

*Signature of Clerk or Deputy Clerk*